BERNARD WENZLER, Plaintiff in Error, v. THE PEOPLE OF THE STATE OF NEW YORK, Defendants in Error.

The provision of the State Constitution (art. 6, § 18), declaring that "justices of the peace and district court justices shall be elected in the different cities in this State," etc., does not include police justices in the city of New York, but these officers may rightfully be appointed as provided by the act of 1873, entitled, "An act to secure better administration in the Police Courts of the city of New York." (Chap. 538, Laws of 1873.) (CHURCH, Ch. J., and ALLEN, J., dissenting.)

Clark v. The People (26 Wend., 599) distinguished.

The provisions of said act prescribing the duties of the police justices appointed thereunder as well those relating to the Court of Sessions as those in reference to the Police Courts, are embraced within the subject expressed in its title. It is not, therefore, repugnant to the constitutional provision requiring a private or local bill to embrace but one subject and that to be expressed in the title. (Const., art. 3, § 16.) (CHURCH, Ch. J., and ALLEN, J., dissenting.)

Accordingly held, that a Court of Sessions held by police justices appointed under said act was legally constituted. (CHURCH, Ch. J., and ALLEN, J., dissenting.)

(Argued June 15, 1874; decided November 10, 1874.)

ERROR to the General Term of the Supreme Court in the first judicial department, to review judgment affirming an alleged judgment of the Court of Special Sessions of the Peace in and for the city and county of New York, convicting the plaintiff in error of the crime of petit larceny.

The court which convicted said plaintiff in error was held by three persons, who were appointed and claimed to act as police justices under the act chapter 538, Laws of 1873, and as such held said court.

Elbridge T. Gerry for the plaintiff in error. The act under which the police justices, who composed the court in which the plaintiff in error was convicted, were appointed, was unconstitutional and the court unlawfully constituted. (Const., art. 6, § 18; Kent's Note, 40, on the City Charters; Davies' Law N. Y. City, 154, 233, 242, 249; 1 Doc. Hist. of

N. Y., 752, 772; Dongan Charter, 1686, § 8; Mont. Charter, 1730, § 26; 1 Greenl. Laws N. Y., 11, 12, 297, 302; 4 Loring Andrews' Laws N. Y., 282, 283, 289; 6 id., chap. 35, pp. 50, 58, 59; 6 Webster's Laws of N. Y., 289, 539, 540; Laws 1811, chap. 202, §§ 3, 4; Laws 1832, chap. 58, p. 187; Laws 1835, chap. 251, p. 160; Laws 1838, chap. 318, p. 317; Laws 1848, chap. 153, pp. 249, 250, § 7; 3 Daly's Com. Pleas, 557; 2 R. S. [Edm. 2d ed., 224], 233, § 3; 1 Laws 1857, chap. 446, § 48, p. 590; Laws 1858, chap. 282, pp. 441, 442; Laws 1860, chap. 508, § 6, p. 1008; Laws 1865, chap. 563, § 1, p. 1132; *Huber* v. *People*, 49 N. Y., 134; 1 Laws 1869, chap. 377, p. 854; Wait's N. Y. Anno. Code, p. 31; *People ex rel. Bolton* v. *Albertson*, MS. of Ct. App., Allen, J.; *People ex rel. Lord* v. *Crooks*, 9 Alb. L. J., 156.) The act is local. (*Williams* v. *People*, 24 N. Y., 407; *People* v. *Hill*, 35 id., 449; *Huber* v. *People*, 49 id., 135.) It embraces more than one subject. (Davies' Laws, 180, 183, 184; *Gaskin* v. *Meeks*, 42 N. Y., 186.) None of the subjects are embraced in the title. (*Mayor* v. *Colgate*, 12 N. Y., 146; *People* v. *Hill*, 35 id., 449; *O'Brien* v. *People*, 38 id., 193; *Huber* v. *People*, 49 id., 132; *People* v. *Allen*, 42 id., 417; approving *People* v. *Comrs. Highways, etc.*, 53 Barb., 70.)

*D. B. Eaton* for the defendants in error. As matter of law and fact the justices holding the court in which the plaintiff in error was convicted were *de facto* police justices, and, hence, *ex officio* as well as *de facto* justices of the Court of Special Sessions of the Peace. (*People* v. *Collins*, 7 J. R., 550, 554; *McIntry* v. *Tanner*, 9 id., 135; *Tappan* v. *Gray*, 9 Paige, 507; 7 Hill, 259; *People* v. *Draper*, 24 Barb., 265, 270; *Wilcox* v. *Smith*, 5 Wend., 231; *In re Walker*, 3 Barb., 162; *Hartt* v. *Harvey*, 32 id., 55; *Conover's Case*, 5 Abb. Pr., 79, 80; *People* v. *Tiernan*, 8 id., 359; *People* v. *Mattier*, 2 Abb. [N. S.], 289, 291; *Nelson* v. *People*, 23 N. Y., 296.) The return alleges full jurisdiction and this cannot be controverted, nor can any want of jurisdiction be assigned as error. (*Haines* v. *The Judges, etc.*, 20 Wend., 625; *People*

v. *Suprs.*, etc., 51 N. Y., 443, 446.) Being such *de facto* justices the constitutionality of the law under which they claim their offices, and the legality or fact of their appointment, can only be determined by a *quo warranto.* (*Hartt* v. *Harvey*, 13 Abb., 334; Code, § 440; *People* v. *Draper*, 24 Barb., 265, 272; *Tappan* v. *Gray*, 9 Paige, 507, 509; affirmed, 7 Hill, 259; *In re Whiting*, 2 Barb., 513; *In re Walker*, 3 id., 163, 167–171; *People* v. *Little*, 25 id., 254; *Mott* v. *Connolly*, 50 id., 516; *In re Baker*, 11 How.• Pr., 419; *Conover's Case*, 5 Abb., 73; *Mayor* v. *Conover*, id., 171, 175; *People* v. *Mattier*, 2 Abb. [N. S.], 289; *People* v. *Cook*, 14 Barb., 259; affirmed, 4 Seld., 67; *People* v. *Lane*, MS. op. Ct. App.) The Court of Special Sessions is a city court. (2 Hoff. Laws N. Y., 479; Laws 1855, chap. 337; Laws 1871, chap. 302; *People* v. *Purdy*, 2 Hill, 32; 4 id., 384; *Divine's Case*, 11 Abb., 90; Laws 1851, chap. 444; *Cyphers* v. *People*, 31 N. Y., 373; *People* v. *Rawson*, 61 Barb., 619.) Only such portion of the act as relates to a subject not in the title is void. (*People* v. *Buell*, 46 N. Y., 57, 68; *Huber* v. *People*, 49 id., 132; *In re Volkening*, 52 id., 650; *In re Mayor*, 50 id., 504, 506; *People* v. *Davies*, 47 id., 501; *The Sun*, etc., *Co.* v. *Mayor*, etc., 4 Seld., 241; *Brewster* v. *City of Syracuse*, 19 N. Y., 116, 117; *People* v. *McCann*, 16 id., 58; *In re Walker*, 3 Barb., 163; *DeCamp* v. *Eveland*, 19 id., 81; *Town of Fishkill* v. *F. B. P.*, 19 id., 634; *Sharp* v. *Mayor*, 31 id., 372; *People* v. *Lawrence*, 36 id., 177.) Police justices may be appointed. (*Gurney* v. *Lovell*, 9 Wend., 319, 320; *In re Walker*, 3 Barb., 163, 164; *Boston Silk Co.* v. *Eull*, 37 How., 299, 305; *Mills* v. *Winslow*, 2 E. D. S., 18; *Clark* v. *People*, 26 Wend., 603.) The members of this court were not justices of the peace. (Langbein's Dist. Ct. Pr., 228, 229; *Davis* v. *Hudson*, 5 Abb., 61; *Boston Silk Co.* v. *Eull*, 37 How., 299; *Mills* v. *Winslow*, 2 E. D. S., 18; *Thompson* v. *Sutphen*, id., 527; *Jackson* v. *Wheeden*, 1 id., 141; *Waters* v. *Langdon*, 40 Barb., 408; *People* v. *McKinny*, 52 N. Y., 374, 378.) A law may terminate an official tenure. (*People*

v. *Garey*, 6 Cow., 642; 9 id., 639; *Newell* v. *People*, 7 N. Y., 1, 109; *Bk. of Chenango* v. *Brown*, 26 id., 467, 469; *People* v. *Morrell*, 21 Wend., 563, 575; *Connor* v. *Mayor*, 2 Sandf., 355; 1 Seld., 285, 296, 298; *Phillips* v. *Mayor*, 1 Hilt., 483; *People* v. *Draper*, 15 N. Y., 533; *People* v. *Flagg*, 46 id., 401; *People* v. *McKinny*, 52 id., 374, 378; *People* v. *Gardiner*, 45 id., 812; *People* v. *Keeler*, 17 id., 370; *People* v. *Bull*, 46 id., 57.)

Johnson, J.    The judgment of the Supreme Court in this cause cannot be affirmed, save upon the basis of the constitutionality of the act of the legislature, entitled, "An act to secure better administration in the police courts of the city of New York," and being chapter 538, of the Laws of 1873. The act is assailed upon two grounds, of which, one relates to the extent of the legislative authority, and the other, to the form of its attempted exercise.    To maintain the first of these grounds, it is insisted, by the plaintiff in error, that the constitutional provision adopted in 1870 (art. 6, § 18), in these words: "Justices of the peace and District Court justices shall be elected in the different cities of this State, in such manner, and with such powers, and for such terms, respectively, as shall be prescribed by law;" includes the officers styled police justices, whose appointment is provided for by the act in question.

To maintain the second ground, it is insisted that the act in question is in violation of article 3, section 16 of the Constitution, which provides, that " no private or local bill which may be passed by the legislature, shall embrace more than one subject, and that shall be expressed in the title."

If neither of these grounds suffices to establish the unconstitutionality of the act in question, then the judgment must be affirmed.

The first of the questions presented has been discussed at great length, and with infinite research, and much ability, carrying the inquiry as to the history of the office of justice of the peace, and as to its nature and functions, back to the

period of its origin in England, about the middle of the fourteenth century. Interesting as such inquiries are, we are inclined to think that the meaning of the language employed by the people of this State in 1869, to express their will in respect to their judicial system, does not demand of us to follow this line of examination.

The frequent occasions which the courts of this country have had to ascertain the meaning of the numerous written Constitutions which have existed, and yet exist, within the United States, have made familiar the principles of exposition applicable to those instruments. Among these principles, the most obvious is, that the makers of such instruments and the people who have adopted them must be deemed to have employed words in their natural sense, and to have intended what they said. (*Gibbons* v. *Ogden*, 9 Wheat., 188.)

Applying this principle to the clause in question, we find that justices of the peace and District Court justices are to be elected in the different cities of the State, but we are not furnished with any definition of the terms employed. An officer named justice of the peace has existed in the State quite from the beginning of the State government. This officer has always been known by that legal designation, and was instituted by that title. Justice of the peace has always been as distinctive a title of an office as the title of justice of the Supreme Court. It is not descriptive of function, but the name of a particular office. It is like the name with which it is coupled in this same clause; "District Court justices." These latter are also named by their title, and not designated by a description of their functions. This is made still clearer by the latter part of the same clause, which directs that the powers of each, and their terms of office, shall be such as shall be prescribed by law, which, of course, leaves their functions to be defined and limited at the will and in the discretion of the legislature. The meaning is made still plainer, both by the clause which precedes, and by that which follows. This is the following clause: "All other judicial officers in cities * * * shall be chosen by the electors of cities, or

appointed by some local authorities thereof." It describes a class of local judicial officers, and classifies them, not by their functions, but by their locality.

The preceding clause declares, that: "Justices of the peace and judges or justices of inferior courts, not of record, and their clerks, may be removed," in a specified manner. In this clause we have one set of officers designated by their specific title, and a grouping of (it may be) many others under a descriptive designation, and not a title of office, as judges or justices of inferior courts not of record. All these considerations point to the conclusion, that the terms "justices of the peace," as used in the Constitution, are to be referred to an officer known by that title in law. At the time this article was adopted, there were, so far as we are advised, no officers entitled "District Court justices," except in the city of New York, and in that city there were no officers entitled "justices of the peace," though in some other cities officers of that title existed by law. The clause in question is not to be construed as requiring such officers to be created in every city, but only as providing in respect to them where they did then exist, or might afterwards be established.

The office of police justice had existed in the city of New York for many years anterior to the adoption of the constitutional provision in question. Under that name it was established in 1848 (chap. 153 of the Laws of 1848), and six were to be elected, one in each of the districts hereafter mentioned. The police justices succeeded by that statute to the power and jurisdiction which had previously been vested in officers entitled special justices for preserving the peace in the city of New York, and their jurisdiction was exclusively criminal. By the same act there was established in the city of New York, in each of the six judicial districts, into which, by the act, the city was divided, a court "to be called the Justices' Court of the city of New York;" and in each district there was to be elected a justice, to hold the court in said district. These Justices' Courts, and the justices thus elected, succeeded to the jurisdiction which had belonged to officers

known as the assistant justices of the city of New York, and to the courts known by the name of the Assistant Justices' Courts, which courts and justices were by the said act abolished. The functions and jurisdiction of these officers were civil entirely. The name of these civil courts was again changed by another act of the same year (chap. 276 of the Laws of 1848), to that of " The Assistant Justices' Courts in the city of New York," and subsequently by a law of 1852 (chap. 324), the name was again changed to that of District Courts, by which name they are mentioned in the constitutional amendment in question.

Now, the office of justice of the peace in the State of New York has always been possessed of two jurisdictions: the one civil, extending to specified actions and limited amounts; the other criminal, conferred by statutes naming them among other officers empowered to preserve the peace and to entertain criminal complaints.

At its origin, in the Colony of New York, under the English government, the criminal jurisdiction was the principal and perhaps exclusive function of the justices of the peace; but at an early day in the Colony, civil jurisdiction was conferred; and always, under the government of this State, the civil jurisdiction has been the most important feature of the office, though the union of both in the same officer has for many years been the rule and the distinguishing characteristic of the office. Thus has it been known to the statute law and to popular usage. The Revised Statutes discriminate between the justices of the Marine Court of the city of New York, the assistant justices of that city, the justices of the Justices' Court of the city of Albany, the justices of the Justices' Court of the city of Hudson, and justices of the peace. (2 R. S., 224, 225; and 267, § 231.) The Code of Procedure, sections 52 to 68 inclusive, preserves the same distinction.

No confusion of terms, no interchangeable use of names in respect to these officers, has ever prevailed. The justice of the peace has been a definite legal entity, and has not been confounded with police justices nor district justices nor assist-

ant justices.    Each has been referred to in legislation by the appropriate title, and the name of neither has been used to designate the other.

Under these circumstances I see no reason to think that the provision of the Constitution was intended to mean any thing different from what it says.    It has employed the definite and certain names of particular and existing offices, justices of the peace and District Court justices; and there is nothing in the subject-matter or the context either to require or to warrant us in departing from the plain sense and import of the terms used.    And more, the argument is strong that by justices of the peace were not meant officers having part only of the authority of justices, inasmuch as District Court justices have their civil jurisdiction, and would have been included under the designation of justices of the peace if those terms bore the sense contended for by the plaintiff in error.

It is suggested that the construction thus far upheld in the judgment appealed from is an evasion of the Constitution, and cases are referred to in which it is said that the courts will look at the substance of an office named in the Constitution, and will not allow its provisions as to the mode of filling the office to be defeated by giving it a new name. The principle is both sound and salutary, but it has no application to the case before us.    Its legitimate application is to cases where the legislature confers upon an office newly created, a new name, coupled with duties belonging to an office in existence, and provided for by constitutional requirements; for instance, an act creating a marshal of a county, to be appointed by the governor and senate, and to perform the duties theretofore performed by the sheriff.    Such an act would be an evasion of the Constitution, and it would be rightly held that the office remained unchanged save in name, and could only be filled as the sheriff's office is required to be by the Constitution.    Of this class of cases *The People ex rel. Bolton* v. *Albertson* (55 N. Y., 50) is an example; and many others might be referred to, but they all rest on the

same principle.    To carry out this principle, a constitutional provision will be construed largely, so as to include all legislative acts within the mischief intended to be prevented.    But neither these cases nor the principle involved have any application to a case like the present.    Here, police justices existed when the constitutional provision was framed, and then had the same substantial powers as now.    All legislation designated them as police justices and not as justices of the peace. The Constitution speaks of justices of the peace and not of police justices.    How is it possible to talk of evasion?    If we should construe justices of the peace to mean police justices we should attribute to the convention and the people the vice of saying what they did not mean, and introduce a new and dangerous principle of construction.    If there had been justices of the peace in New York, exercising the functions of these police justices, when the amended judiciary article was adopted, and if police justices had not then been existing officers, and the legislature had afterwards created the office of police justice and altered the mode of selection, that would have been an evasion.    (*People* v. *McKinney*, 52 N. Y., 374.)    But the whole foundation is wanting, and such a superstructure rests on nothing.

The case of *Clark* v. *The People* (26 Wend., 599) does not conflict with the views stated.    The statute there in question authorized the common council of Rochester to appoint a justice of the peace, and the court held that all justices of the peace were excepted from the requirements of the Constitution then in force, that judicial officers (other than such justices) should be appointed by the governor and senate. Some things were said by some of the senators who gave opinions, showing that they thought all the varieties of justices in New York city were justices of the peace.    But the judgment does not involve that position, and the whole course of legislation is hostile to it.    I do not advert to the argument from what passed in debate in the convention, though, in my opinion, it favors the conclusion I come to. Such arguments, at best, are inconclusive, for they only show

the opinions of the speakers; others may have proceeded on quite different grounds. As was well said, on the argument of this case, the distinguished gentlemen whose utterances in debate were invoked upon this question had power neither to settle a construction or make a compromise in respect to the language of the Constitution. It was adopted by the people, and our construction ought to be made upon its language alone, if possible.

We are of opinion, therefore, that police justices in the city of New York are not included by the terms justices of the peace in cities, as used in the section of the Constitution in question, but that those officers may rightfully be appointed, as provided in the act of 1873.

The next question depends upon the effect and applicability of article 3, section 16 of the Constitution, which declares that "no private or local bill which may be passed by the legislature shall embrace more than one subject, and that shall be expressed in the title." The title of the act in question is, "An act to secure better administration in the police courts of the city of New York." The act is, therefore, unquestionably a local act, relating as it does, both by its title and all its provisions, to the city of New York. Although public and not private, in all its provisions, the requirement of the Constitution is, that it shall embrace only one subject, and that this single subject shall be expressed in its title. The title obviously expresses but one subject, and that is the securing of better administration in the courts named. Now every provision of law which legislative wisdom may regard as conducive to the securing of better administration in these courts may legitimately be put in this act. For otherwise we must say that the legislature is precluded from securing by a single law an object obviously of the first importance in the local administration of justice in the criminal courts of New York. For if provisions of the act, no matter how diverse, have a tendency to produce better administration, then, unless they may be embraced in a title sufficiently general to include them all, they cannot be enacted at all in a single law. If they

make two subjects, they cannot be united. It is only by regarding them as part of a single scheme, and each part as of equal necessity, and by adopting a title sufficiently general, that the whole project of local legislation can be combined into a single law. Now, upon examining the provisions of the act in question, it is entirely obvious that every part of it is within the legislative power. Its enactments, in substance, are not a usurpation on the part of the legislature. They may be distasteful and may be thought unwise, but they are legislative in character. Nor do I see any ground to say that each provision may not be of that character and bear that relation to every other, that a legislature proceeding on just and public grounds may have thought it unwise that any one provision should become the law, unless each of the others also became the law. In that case all relate to the same subject, for all are essential to work out the legitimate purpose of the law — the securing better administration in the courts mentioned. Of this character are the provisions substituting new officers for the old, and prescribing the duties of these officers, as well in the Police Courts as in connection with the Court of Sessions, of which the former officers were also members, and which are the necessary changes to preserve the harmony of the scheme of legislation and to carry out in the needful detail the changes introduced by the act under consideration. Surely no such construction can properly be put upon the constitutional provision in question as to require a single scheme of legislation to be broken up into a series of acts, each of which, without the others, would be regarded as undesirable and ineffectual to accomplish the proposed object. Such a construction would make of the provision in question not a guard against fraudulent, but an obstacle and embarrassment to good legislation. It ought not, as matter of principle, to receive such a construction, and none of the cases require it. Thus, in *Sullivan* v. *The Mayor* (53 N. Y., 652), the act involved was entitled, " An act to make provision for the government of the city of New York." It levied taxes for a great variety of purposes, authorized bonds of various

kinds for various purposes, provided for charities, and for schools educating children gratuitously, and prohibited the common council from creating any new office or increasing salaries except as authorized by acts of the legislature. All these provisions were deemed, as being parts of one scheme, to form only one subject, and to be expressed in the title. So was it held in the *Matter of Volkening* (52 N. Y., 650), in respect to "An act relative to contracts by the mayor, etc., of the city of New York." The act, in the first place, regulated contracts on behalf of the city by requiring them to be let to the lowest bidder. It then provided that the power to revise and correct assessment lists, before vested in the common council, should thereafter be vested in the comptroller, corporation counsel and recorder of the city. These provisions were nevertheless held to relate to a single subject, and that, the subject expressed in the title. These cases were deemed by the court so clear in the light of previous discussion, that the opinions delivered in them have not been reported, but the judgments themselves were deemed their own sufficient vindication. The previous judgment of the court in *The Matter of Mayer* (50 N. Y., 504), and the full discussion by the chief judge of the principles which ought to govern in the decision of questions arising under this provision of the Constitution, had rendered unnecessary further examination. Within the reasoning of that case, the decisions already cited, and the case now before us, may safely rest.

We are of opinion, therefore, that the law in question is not a violation of the Constitution; and that the judgment of the Supreme Court must be affirmed.

ALLEN, J. (dissenting). The conviction of the plaintiff in error is claimed to be erroneous upon the ground that the court was not legally constituted, and that the justices holding the same were not duly appointed to their offices.

The law under which the members of the court were appointed to, and claim to hold and enjoy the emoluments of the office of "police justice" of the city of New York (Laws

of 1873, chap. 538), and to be authorized to hold the Court of Sessions, is challenged as unconstitutional upon two grounds : First, that the office, the title to which is disputed, is that of a " justice of the peace," and therefore elective, under section 18 of article 6 of the Constitution ; second, that the act is local and does not conform to the requirements of section 16 of article 3 of the Constitution, that bills of that character shall embrace but one subject, and that that shall be expressed in the title. The questions presented by these objections lie within a very narrow compass, and do not admit of discussion at great length. They will be considered in the order stated.

First. The Constitution (art. 6, *supra*) makes justices of the peace in the several towns elective, and prescribes their terms of office. It also declares that " justices of the peace, and District Court justices, shall be elected in the different cities of this State, in such manner and with such powers, and for such terms, respectively, as shall be prescribed by law ; " and that all other judicial officers in cities whose election or appointment is not otherwise provided for in the same article, shall be chosen by the electors of cities or appointed by some local authorities thereof. At the time of the adoption of this article of the Constitution, in 1870, the jurisdiction exercised by justices of the peace, in the several towns of the State, was divided in the city of New York between " police justices " and " District Court justices," the former having and exercising jurisdiction in criminal matters and the latter exercising a civil jurisdiction, the powers and jurisdiction of each modified to meet the exigencies of a large city.

Both classes of officers were elective and made so by the Constitution then in force.

The justices holding the court were appointed to the office of " police justice," in the city of New York, by the board of aldermen of the city, upon the nomination of the mayor, pursuant to the law of 1873 (*supra*). If the office is that of " justice of the peace," it was not competent for the legislature to deprive the electors of the city of the power to elect to it, and to confer the power of appointment upon the mayor

and aldermen, or other local authority. The office must be judged and its character determined by its duties and functions, and the powers and jurisdiction conferred upon the incumbent rather than by the name and title given to it by the act of its creation. (*People* v. *Raymond*, 37 N. Y., 428; *Same* v. *Albertson*, 55 id., 50.) The Constitution does not define the terms used, or declare the functions of the office intended by the terms employed, but adopts the title of an ancient and well known office for that purpose. The intent is manifest to secure to the electors of cities the choice of that class of magistrates whose duties were those of a "justice of the peace," as that office was known at common law and in the judicial history of the State, and that intent cannot be frustrated or the provisions evaded by a verbal change in the name or title. The identity of the office with that mentioned in the Constitution is not destroyed by giving it a different baptismal name in the statute creating or continuing it.

If the magistrates appointed pursuant to the act under consideration are, by reason of their peculiar duties and functions, "justices of the peace" in the common-law and historic sense of that title, the Constitution making the office elective applies in all its force, irrespective of the title given it by statute. (*People* v. *Albertson*, *supra*.) The descriptive title employed in the Constitution to designate the office was not used in a peculiar or restricted sense, nor is there evidence in or out of the instrument of a design to discriminate against the electors of the city of New York in the matter of choosing justices of the peace, or magistrates who should be specially charged with the duties appertaining at common law to that office. The office of "justice of the peace" is an office of great antiquity, and the jurisdiction of justices of the peace has varied from time to time, depending either upon the terms of their commissions or particular statutes; but at all times they have had ample jurisdiction in all matters concerning the public peace, and from these powers, as conservators of the peace, is derived and taken the descriptive title and name of their office. The term conservator of the peace and "justices

of the peace," are regarded as equivalent, the one for the other. (*Regina* v. *Bonnet*, 11 Mod., 141.) Those who in respect of some other office have power to keep the peace, as an incident or in addition to their other and general powers of office, have not been called conservators or justices of the peace, but by the name of their respective offices; as in the case of aldermen, or other officers, invested with some or all the powers of justices of the peace, but those who are constituted for the purpose only of keeping the peace and performing the duties assigned in that respect, and in respect to the arrest and punishment of offences, to justices of the peace are called by the name indicative of their peculiar functions, that is, "justices of the peace." (Bac. Abr., Justice of the Peace, A.) A justice of the peace is defined to be "a public officer, invested with judicial powers, for the purpose of preventing breaches of the peace, and bringing to punishment those who have violated the law." (Bouv. Law Dic.) Their common-law powers relate exclusively to matters affecting the public peace, and to the arrest and punishment of wrong-doers, and the extent of their jurisdiction in the trial and punishment of offenders is regulated by statute, and has varied, both here and in England, at different times and in different localities. In this State, as in many others, a limited civil jurisdiction is conferred in addition to the criminal jurisdiction, but this has not effected any change in the designation and title of their office, and whether they have the civil jurisdiction or not, they are technically and legally justices of the peace in the common-law sense, so long as they have and exercise the common-law powers of that class of magistrates in respect of breaches of the peace and criminal offences. (See, also, Burr. Law Dic.; Wheat. Law Dic.; 1 Bl. Com., 351; *Reg.* v. *Bonnet*, 11 Mod., 141.) A police justice is a magistrate charged exclusively with the duties incident to the common-law office of a conservator or justice of the peace, and the prefix "police" serves merely to distinguish them from justices having also civil jurisdiction. The term "police" is ordinarily used in reference to the government of a city or town, but is equally

applicable to any other municipal government. A judiciary police is established solely for the preservation of the public peace and the prevention and punishment of crimes, and a judicial office created for that purpose comes directly within the class of magistrates known in the common law and the judicial history of the State as justices of the peace, and must, under the Constitution, be chosen by the electors of the locality. The jurisdiction of the "police justices" named in the act of 1873 is not prescribed or defined in terms in the act itself, but is declared by reference to prior laws by which the functions, powers and duties of the magistrates for whom substitutes and successors were intended to be provided by the law under consideration were declared and established. The first section of the act declares that "all the powers, authority and duty now appertaining to any police justice in the city of New York, or which may appertain to any such in office under laws heretofore existing, shall belong to and may be exercised and performed by the police justices appointed hereunder respectively, and also by them as members of the board of police justices, and when sitting in the Court of Special Sessions of the Peace, except as hereunder limited." Other parts of the act direct as to the manner in which the jurisdiction thus conferred shall be exercised and provides for the officers and attendants of the court, the order in which the justices shall hold court, and other matters modal in their character and constituting the machinery of the organization. After the clause declaring the jurisdiction, all the other provisions of the act have respect only to the exercise of that jurisdiction and are intended to facilitate the performance of the duties devolved upon the justices in regard to the public peace and the arrest and punishment of wrong-doers. A reference to the magistracy and the administrative and judiciary police of the city under the Dutch government, or while it was a part of an English colony, will not aid in the interpretation of the judiciary article engrafted upon the Constitution of the State in 1870. Such a reference will only show, what all know must necessarily have been the case,

that at all times and under all forms of government, officers have existed charged with the powers and duties appertaining to the common-law office of a justice of the peace. No city government could exist without such a magistracy under some name. From the first organization of the State government there have been justices of the peace exercising criminal jurisdiction. In 1787, it was enacted that in every county of the State " good and lawful men, of the best reputation, should be commissioned justices to keep the peace ; " their jurisdiction was exclusively over crimes and misdemeanors, and similar in extent and the mode of its execution to that exercised by justices of the peace of the several counties of the State from that day to this. By section 10 of the same act, the mayors, recorders, and aldermen of the cities of New York and Albany were clothed with the same powers possessed by justices of the peace in the several counties. (Laws of 1787, chap. 8 ; 1 Gr. Laws, 297.) There has at all times been magistrates for the trial of civil actions in the city of New York, distinct from those possessing criminal jurisdiction. They have been called some times assistant justices, and at times by other titles. (Laws of 1787, chap. 89 ; 1 Gr. Laws, 445 ; Laws of 1807, chap. 139 ; Laws of 1848, p. 249 ; id., p. 404 ; Laws of 1852, p. 471.)

In 1798 the police organization of New York was reconstructed and two justices authorized to be appointed, each of whom was to be denominated in his commission a special justice for preserving the peace in the city, and who should, within the said city, execute the like authorities which were, by law, vested in justices as conservators of the peace. (Laws of 1798, chap. 25 ; Sess. Laws, p. 282.) By the act of June 18, 1812 (6 W. & S. Laws, 539), it was enacted " that the special justices for preserving the peace in the city of New York and each of them, shall have and exercise the like powers in the said city as are now exercised by justices of the peace in the different counties of this State." The authority to try causes for the recovery of debts was excepted by a special clause, thus making them simply "justices of the peace ; "

that is, conservators of, or justices assigned to keep the peace.

The act of April 9, 1813 (2 R. L., 342), to "reduce such laws relating particularly to the city of New York into one act," increased the number of special justices to three, and re-enacted the provisions of the law of 1812 as to their jurisdiction. (Secs. 22 and 41.) In 1832, 1835 and 1838, the common council of the city of New York were authorized to appoint additional "police or special justices for preserving the peace in the city," with the like powers and to perform the same duties as were then by law conferred upon, or required from, the special justices of the city. (Laws of 1832, chap. 58; Laws of 1835, chap. 151; Laws of 1838, p. 317.) In 1848 the city was divided into six districts, with a justice to be elected having civil jurisdiction in each. (Laws of 1848, chap. 153, § 1.) By the same act (sec. 7), a "police justice" was required to be elected in each of the districts, who should "have all the powers and perform all the duties of the special justices for preserving the peace in the city of New York." In 1854, and again in 1869, additional judicial districts were constituted in the city of New York, a "civil justice" and a "police justice" authorized to be elected in each, with the same powers as were possessed by the other justices. (Laws of 1854, chap. 65; Laws of 1869, chap. 377.) Other statutes had conferred upon the "police justices" the power to hold Courts of Special Sessions for the trial of certain offences. (Laws of 1857, chap. 446; Laws of 1858, chap. 282; Laws of 1865, chap. 563.) The "police justices," under the act of 1873, succeeded those elected under the act of 1848 and the laws amending the same, and the Constitution of 1846 (art. 6, § 18), making the office elective, and they succeeded to their powers and duties and none other. Those powers and duties were, as appears by this review of the legislation from 1787, merely that of justice of the peace, or conservators of the peace. The legislature have, in effect, incorporated the provisions of the laws of 1798 and 1812 in the act of 1873, and making the "police

justices," under the latter act, the lineal successors of the "special justices" of the former laws, have in terms invested them with the "like powers in said city as are exercised by the justices of the peace in the different counties of this State," except in respect to actions for the collection of debts: that is, the jurisdiction of justices of the peace in preserving the public peace, and in the arrest and punishment of wrong-doers, precisely the jurisdiction which, distinguishing justices of the peace from other magistrates, gives title and name to their office, and makes it strictly and literally the office declared by the Constitution to be elective. The words "special" or "police" do not affect the character of the office or take it out of the nomenclature of the Constitution, but rather, in the connection in which they are used, show more clearly that it is the office intended by the framers of the Constitution. Judge COMSTOCK and Mr. Murphy were clearly right in their statements in the convention, that by the article of the Constitution, as finally adopted, the office of police justice would be left precisely where it was. It was elective under the Constitution then in force, and if the amended article should be adopted, as it was, it would continue to be elective. Judge FOLGER was also equally accurate in his statement upon the insertion of the clause making justices of the peace in cities, and justices of District Courts elective, that police justices and Police Courts would be within the provision relating generally to inferior courts of civil and criminal jurisdiction. They were purposely taken out of the operation of that section by the amendment now under consideration. By the amendment perfecting the section, every judicial officer in cities was provided for and made elective. The policy of the framers of the Constitution was to give to the electors the choice of judicial officers of all grades, and this was done as to all such offices in existence at the time, except the temporary office of commissioner of appeals. The Constitution does not take from the electors the choice of a single office by name, with the exception stated, and if it had been intended to make the office of "police justice" an exception, as not

embraced in the term "justice of the peace," the attention of
the convention called to that office as it was, it would, with a
view to certainty have been expressly named in the clause
inserted, from excess of caution to provide for offices not other-
wise provided for lest some might have been overlooked. We
must assume that the members of the convention well under-
stood the distinctive characteristics and jurisdiction of justices
of the peace, and adopted the provision with a clear under-
standing of its effect. The convention had already, in the
first clause of the section, provided for the election of justices
of the peace in the several towns of the State, and the clause
under consideration was inserted to make the officers in cities
exercising the same powers also elective, and the office was
described by a name indicating to the legal mind as well as
to the popular intelligence, the character and particular
functions of the office intended. If the constitutional man-
dates in respect to every office could be evaded by simply
devolving the duties upon an officer under another name, the
sanctions of that instrument would be of but little value.
The office of police justice, under the act of 1873, is that of
a "justice of the peace," and could only be filled by an elec-
tion. The appointment of the parties holding the Court of
Sessions, by the mayor and aldermen of the city, was therefore
a nullity, as is also the act under which the appointments were
made. The interpretation of the Constitution, which would
exclude police justices from the class of officers elective under
the generic term of justices of the peace, would be extremely
technical and literal in disregard of the spirit as well as the
plain and positive meaning of the language employed.

The other objection is to the title of the act. The mandate
of the Constitution is, that "no private or local bill which
may be passed by the legislature shall embrace more than one
subject, and that shall be expressed in the title." (Const.,
art. 3, § 16.) The purpose and object of this provision are
so apparent, and have been so repeatedly expressed by the
courts, that they need not be restated here. (*Conner* v. *Mayor,
etc., of N. Y.*, 1 Seld., 285; *Sun Mut. Ins. Co.* v. *Same*, 4

id., 241; *People* v. *Hills*, 35 N. Y., 449; *Gaskin* v. *Meek*, 42 id., 186; *Huber* v. *People*, 49 id., 132.) It is a salutary enactment, and commends itself in view of the evils resulting from a disregard of it, to the favorable consideration of legislators and courts. Like every other constitutional enactment, it should receive a reasonable interpretation, and have full effect according to the intent of its framers and the people by whom it was adopted, as such intent is expressed in its terms. Neither the provision itself, or any law which may be brought to a test under it, should be hypercritically interpreted, and a strained and unmeasurable effect given it, to the annulling of laws deliberately passed by the legislature. If, however, an act of the legislature, local or private in character, does embrace upon a fair and reasonable construction two or more distinct subjects, or embracing but one subject, the title does not, upon a like construction intelligently express that subject, there is no room for the exercise of a presumption, for there is no question of intent involved, but the law must be held void as violative of a positive requirement of the Constitution. This is entirely consistent with all that this court has said when reasoning in support of laws questioned as in conflict with the requirement. There has been no intent to relax the rules which have governed in applying the test of this provision to statutes as they have come under review, and general expressions in opinions of judges should not be interpreted as indicating a leaning of the court in that direction. (*People* v. *Briggs*, 50 N. Y., 553; *Brewster* v. *City of Syracuse*, 19 id., 116; *Conner* v. *Mayor, etc., supra.*) The title of the law is, "An act to secure better administration in the Police Courts of the city of New York." The body of the act removes from office all the police justices then in office, and repeals the laws under which they were elected and held office. It provides for the appointment of ten police justices to take their place and exercise their powers, and prohibits those removed from office, as well as the aldermen and district justices and other city officers, not being judicial officers, from

exercising any such power and authority thereafter. (Laws of 1873, chap. 538, § 1.) Each of the police justices in office at the time of the enactment of this law had authority and it was his duty to hold in his order Police Courts. He was also a member of a board of police justices and had duties to perform in connection with his associates as such, and was also a member of the Court of Special Sessions of the Peace, authorized and required to sit and act as one of the justices of such court. Their duties and authorities were entirely distinct and each was specially conferred by statute, and the performance of each of the duties regulated by law. Each and every of their duties and powers were devolved, in terms, by the act under review, upon the ten police justices authorized to be appointed, and the exercise of the powers and performance of the duties expressly regulated by the same act. The title of the act indicates but a single subject, and that is, in substance, to reform the administration in one of these tribunals, viz., the Police Courts held by a single justice. It, in effect, creates new Police Courts, which may or may not secure a better administration of the law, and also a new board of police justices and a new Court of Special Sessions, the court in which the plaintiff in error was convicted. The administration of the Police Courts might have been improved without touching or affecting the other tribunals named. The powers and jurisdiction of a " Police Court " and of the justice holding the same were prescribed by law, and are such as appertain more immediately to the preservation of the peace, the police of the city, the arrest, examination and holding to bail of offenders against the law, and the summoning, trial and conviction for certain minor offences. The Court of Special Sessions has jurisdiction to try, hear, determine and punish all complaints for misdemeanors; and this jurisdiction is declared to be exclusive, except in certain specified cases. A reorganization of a court of this large jurisdiction is not within the title of an act relating to an improved administration in Police Courts only; and so much of the act as relates to Courts of Special Sessions is entirely

beyond and outside of the enactments relating to the Police Courts. If the regulation and reformation of the Police Courts was, as indicated by the title, the subject of the act, the reorganization and reformation of the Courts of Special Sessions was another and distinct subject, and the act is subject to condemnation as embracing two distinct subjects. But it may be said, and with great propriety, that both courts might well have been provided for and reorganized in one act as being connected with and parts of one scheme for the government of the city of New York, the preservation of the peace and the punishment of crime. But if this is conceded, as it must be, it follows that the title of the act is defective. It is not such as to indicate to any one the extent and general subject of the legislation covered by it. Instead of, as in some cases, taking in the entire subject in all its details and branches, under a general term or verbiage in the title which would embrace all, and thus include the lesser with the greater, the opposite course is taken and a single detail or branch of the general subject is referred to in the title, and it is sought under it to legislate as to every branch and part of the larger and entire subject in detail. This cannot be, so long, as is the case here, the different parts of the whole subject are capable of division, and one may be the subject of legislative action without the other. Doubtless the entire police system, including the local judicial organizations for the preservation of the peace, and the prevention and punishment of crime in the city of New York, might be reorganized and remodeled in a single act with a proper title, but such an act, under a title indicating the reorganization of a single, and that an inferior branch of the system, would be clearly in conflict with the Constitution. The subject would not be expressed in the title. The understanding and clear deduction from all the cases, as well as the manifest intent of the requirement, is, that the title of an act may be general, but must be sufficiently comprehensive to embrace the entire subject of the enactment, and if the one subject embraces several departments all must be within the

general terms of the title. The title of this act does not conform to the Constitution in this view of it, giving the title the most liberal interpretation and the Constitution the most beneficent application. A reference to the general scope and terms of the act will clearly demonstrate that the title fails to express the subject of the legislation, or indicate the character or extent of the changes effected by it in the courts and magistracy of the city. The title of the act is only indicative of some change in the form and mode of administering the laws in one of the courts of the city, some new regulations, administrative in their character, in the existing Police Courts of the city. The major part of the act and its principal provisions are not within the limits of the language of the title. That does not look to, or intimate, any reform or change in the constitution of any court, but merely a reform in the practice or administration in the courts named in the title. It certainly comes far short of indicating or intimating the abolishing of the existing Police Courts and Courts of Special Sessions, and the establishment of other like tribunals in their stead, or the removal from office of one class of magistrates, and the appointment of another ; neither does it manifest an intent to take from the electors of the city the choice of the new magistrates, and confer their appointment upon a local authority. Administration is the act of administering — of conducting the office, or in this case the execution of the powers and duties of the courts named ; the administering the laws by those courts in their application to particular persons or cases. A reformation in the administration or conduct of the courts is entirely different from a radical reconstruction and reorganization of the courts themselves. The objection is not that the subject of the act accomplishing the latter result is not expressed by the most apt and fit terms. The difficulty is, that by a title merely expressive of a design to secure a better administration in the Police Courts, the subject of the statute is not expressed or indicated in any form or sense ; and that no one reading the title would suspect the real purpose and object of the body of the law. If the Con-

stitution is not to be made a dead-letter, an act, the title of which not only effectually disguising and concealing the real purpose of the law, but giving an entirely false impression as to its real import, as is the case in the act before us, cannot be sustained or regarded as a substantial or reasonable compliance with it. The motives of the legislature in the enactment of the law are not in question. The purpose and object are to be judged by the body of the act, and the great objection to the validity of the law, as violative of the provision of the Constitution under consideration, is that the legislature have, in the body of the act, sought to accomplish a purpose not expressed or indicated in the title of the bill, and in the enactment have departed from, and entirely lost sight of, the limited and particular subject expressed by the title.

The judgment in .Huber v. People (49 N. Y., 132), was the unanimous judgment of this court, and the case was not regarded as a border case, but the law was thought to be in manifest conflict with the Constitution in the respect in which it was declared invalid. In view of the consequences resulting from the decision, the court, so far from giving a strict or exclusive effect to this section of the Constitution, were inclined, if possible, to hold the provision of the statute then under consideration as within the general terms of the title of the act, but were unable upon any fair interpretation to do so. This case presents a far more marked and distinct departure from, and disregard of the Constitution than did that. Here there can be hardly a pretext, certainly no plausible argument, in support of the claim that an act as general and radical as this, in the changes effected in the law abolishing and dissolving the existing Police Courts and Courts of Special Sessions of the Peace, abolishing the office of district police justices and removing the incumbent from office, and removing the clerks, officers and attendants of the old courts and establishing other courts, and providing for the appointment of ten police justices for the city at large, and creating new clerks and officers, and providing for their appointment, is expressed by or embraced within the terms

of the title of an act " to secure better administration in the Police Courts." The court was not well constituted, and the act under which it was organized was void.

Judgment should be reversed.

All concur with Johnson, J., except Church, Ch. J., and Allen, J., dissenting.

Judgment affirmed.