THE PEOPLE OF THE STATE OF NEW YORK ex rel. HENRY E. WHITE, Appellant, v. THE COMMON COUN-CIL OF THE CITY OF ROCHESTER, Respondent.

*Charter of the city of Rochester — chap 143 of 1861 — justice of the peace in — power of legislature to abolish — chap. 196 of 1876 — Constitution, art. 6, § 18.*

The justices of the peace in the city of Rochester whose election is provided for in chapter 143 of 1861 are not justices of the peace within the meaning of that term as used in the Constitution, and the courts held by them are courts of inferior jurisdiction within the meaning of section 19 of article 6, and the legislature may abolish them and institute others in their stead.

APPEAL from an order of the Special Term in Monroe, denying the relator's application for a *mandamus* to compel the common council of the city of Rochester, as a board of canvassers, to certify who was elected to the office of justice of the peace at the city election held in March, 1877.

The charter of the city of Rochester, passed April 8, 1861 (Laws 1861, ch. 143), provided that there should be three justices of the peace of said city (§ 6), one of whom should be elected in each year, for a term of three years. (§ 7.)

By chapter 196 of the Laws of 1876, the legislature established a local court of civil jurisdiction in said city, called the Municipal Court of the city of Rochester, and conferred upon its judges the jurisdiction theretofore vested in the justices of the peace of the city. Section 16 of the act provided that thereafter no person should be elected to the office of justice of the peace in said city, and it expressly repealed all acts and parts of acts, and all provisions of the charter, in relation to a Justice's Court in said city, inconsistent with the said act. At the charter election in said city on the 6th of March, 1877, seventy-eight votes were cast for the office of justice of the peace, of which the relator received a majority.

Previously thereto the Municipal Court, created by the act of 1876, had been organized, and the judges thereof, appointed pursuant to the provisions of the act, had entered upon the duties of their office. A notice of the charter election was published as required by law, but no notice was given that a justice of the peace for said city would be elected.

Statements of the inspectors of election showing the votes given as above stated, were filed and produced to the common council, and the relator thereupon requested that body to certify to his election, which was refused.

It is claimed on behalf of the relator that the act of 1876, so far as it attempts to abolish the office of justice of the peace in said city, is unconstitutional.

*J. Van Voorhies,* for the relator and appellant.

*J. B. Perkins,* city attorney, for the respondent.

Smith, J. :

The act creating the " Municipal Court" of the city of Rochester, in effect abolished the office of justice of the peace in said city. The council for the relator claims that, in that respect, the act is unconstitutional, for the reason that the office of justice of the peace is established by the Constitution, and cannot be abolished by the legislature. He relies upon the provision in the concluding sentence of section 18 of article 6, that " justices of the peace and district court justices shall be elected in the different cities of this State, in such manner, and with such powers, and for such terms, respectively, as shall be prescribed by law." The remainder of the sentence is in these words : " All other judicial officers in cities, whose election or appointment is not otherwise provided for in this article, shall be chosen by the electors of cities, or appointed by some local authorities thereof." The sentence quoted was adopted in 1870, and its object was to provide that whenever the offices named should exist in a city, the power of choosing the incumbents should be vested in the electors of the city. The object was not to require every city to have justices of the peace and district court justices, or either of them ; nor was it the intention to perpetuate those offices in cities where they then existed. The legislature was vested with power to abolish all local courts in cities and villages (art. 14, § 12), as well as to establish them. (Art. 6, § 19). This construction is confirmed by a reference to the debates in the convention which proposed the amendment adopted in 1869. Section 18 of article 6, as originally reported, was precisely as it now stands, except that it did not contain what is now the last sentence of the section. Mr. Murphy, of Kings, adverted to the fact that the section as proposed provided for the election of justices of the peace in towns, and said there was no provision for justices of the peace in cities, or for police officers, except in the general clause in regard to local courts of inferior jurisdiction thereafter to be organized. (Sec. 19, art. 6.) He insisted there should be no such distinction between the electors of cities and those of the country. (Proc. and Deb. of Con. of 1867–8, vol. 5, p. 3732.) He proposed to add a provision that justices of the peace and police justices shall be elected in the different cities, etc. His proposition was amended by substituting " district court justices " for " police justices," and was then adopted.

The justices of the peace created by the charter of the city of Rochester had not the same functions as justices of the peace in towns. Their civil jurisdiction was the same, but they had no criminal jurisdiction, except to issue warrants returnable before the police justice, and except also that upon a return to a criminal warrant stating the absence from the city or the inability of the police justice, the justice before whom the prisoner was brought, had jurisdiction of the case. (Charter, §§ 237, 247.) Their term of office was three years; that of justices of towns, four. As was said by JOHNSON, J., in *Wenzler* v. *The People* (58 N. Y., 522), "the office of justice of the peace in the State of New York has always been possessed of two jurisdictions — the one civil, extending to specified actions and limited amounts; the other criminal, conferred by statutes, naming them among other officers empowered to preserve the peace and to entertain criminal complaints." By the charter of Rochester, the criminal jurisdiction usually possessed by justices of the peace was given to the police justice of the city. In *Wenzler's Case* the question was whether police justices in the city of New York were included in the words "justices of the peace," as used in the clause of the eighteenth section now under consideration. It was held they were not. "The argument is strong," said the same learned judge already quoted, "that by justices of the peace were not meant officers having part only of the authority of justices, inasmuch as District Court justices have their civil jurisdiction, and would have been included under the designation of justices of the peace, if those terms bore the sense contended for by the plaintiff in error;" that is to say, if they included police justices. (P. 523.)

In my judgment, the true view of the matter is that the courts held by the justices of the peace of the city of Rochester were inferior local courts, within the meaning of the Constitution (*Dawson* v. *Horan*, 51 Barb., 459), and the legislature consequently had power to abolish them.

The order should be affirmed, with ten dollars costs of appeal and disbursements.

Present — MULLIN, P. J., TALCOTT and SMITH, JJ.

Order of Special Term affirmed, with ten dollars costs of appeal and disbursements, to be paid by the relator.