## IN RE JOHNSON.

*February 10—March 8, 1921.*

*Infants: Juvenile courts: Nature: How designated in papers and records: Neglected children: Separate trials: Discretion of court: Right to jury trial.*

1. The court of record which is designated by the judges in each county as the court for the exercise of juvenile jurisdiction conferred on all courts of record is not a separate juvenile court, and the venue and other papers on appeal therefrom should be stated as from the county court or other court designated and not as from the juvenile court.

2. Proceedings against children alleged to be dependent and neglected are not criminal proceedings, but are in the exercise of the police power of the state for the protection of the children.

3. The granting of separate trials to such children rests in the discretion of the trial court; and in proceedings against four children alleged to be dependent and neglected, where all the children had the same mother, but two were by a former husband, and they were all living together with their mother and her present husband so that the same circumstances would necessarily be brought in evidence as to each child, it was a proper exercise of the discretion of the trial court to refuse to grant a separate trial to each child.

4. Since sub. (1) (a), sec. 48.01, Stats. 1919, defines dependent child and neglected child as meaning the same thing, sub. (4) of the same section entitles a neglected child to a trial by jury on demand, though in terms it refers only to dependent and delinquent children.

APPEAL from a judgment of the county court of Sauk county: AUGUST C. HOPPMANN, Acting Judge. *Reversed.*

Upon the petition of W. H. Ode, resident of Sauk county, addressed to the juvenile jurisdiction of the county court of that county, and proceedings subsequently had thereon, ·judgment was rendered taking the custody and control of *Mabel Johnson, Rose Johnson, Elsie Raatz,* and *Annie Raatz,* alleged neglected children, from their parents, *James R. Johnson* and *Tina Johnson,* and making temporary disposition of their custody and control. From such judgment the parents and said minor children bring this appeal.

For the appellants there was a brief by *Ruggles & Evenson* of Baraboo, and oral argument by *W. G. Evenson.*

For the respondent the cause was submitted on the briefs of *Henry J. Bohn,* district attorney of Sauk county.

OWEN, J.   The printed case and briefs refer to this appeal as one from the juvenile court of Sauk county.   This is improper.   The statutes do not create a separate juvenile court.   Juvenile jurisdiction is conferred upon all courts of record and provision is made for the exercise of that jurisdiction by such court of record in each county as may be designated by the judges of such courts.   As a result of careful scrutiny of the record returned to this court, we discover that in this instance this jurisdiction was exercised by the county court of Sauk county.   The proceedings were had in, and the appeal is from, the county court and not from the juvenile court of Sauk county.   The venue should have been so stated in the various papers pertaining to the case.

*Tina Johnson* is the mother of *Rose Johnson,* aged four years, and *Mabel Johnson,* aged two years, by her present husband, *James R. Johnson,* and of *Elsie Raatz,* aged fourteen years, and *Annie Raatz,* aged twelve years, by her former husband.   At the time of the institution of these proceedings said children were living at the home of *Tina Johnson* and her husband, *James R. Johnson,* in Sauk county, Wisconsin.   The trial court found that said *Tina* and *James R. Johnson* were improper persons to have the care, custody, and control of said minor children, and by its judgment took from them the custody and control of said children and made temporary disposition thereof.   The appellants assail this finding of the court as not being sustained by the evidence.   From a careful consideration of the evidence we conclude that the finding of the court in this respect is abundantly sustained.   The interests of no one concerned will be promoted by extended reference thereto, and with this statement we leave the subject.

Error is also assigned because the trial court refused a separate trial for each of the infant children. This is not a criminal proceeding, as was fully pointed out in *State v. Scholl,* 167 Wis. 504, 167 N. W. 830:

"They are simply statutory proceedings by which the state, in the legitimate exercise of its police power, or, in other words, its right to preserve its own integrity and future existence, reaches out its arm in a kindly way and provides for the protection of its children from parental neglect or from vicious influences and surroundings, either by keeping watch over the child while in its natural home, or, where that seems impracticable, by placing it in an institution designed for the purpose."

The granting of separate trials rested in the discretion of the trial court, and we think that discretion was wisely exercised. While the children were progeny of different fathers, they had a common mother and were living in the same household and subject to the same influences. An inquiry into the conditions surrounding one child necessarily disclosed those surrounding the others. Even though the court might conclude that the best interests of some, but not all, of the children required their removal from the control and custody of the parents, it would not necessarily affect the disposition to be made of the others. The court could remove some of them without removing all. It seems clear that separate trials would have resulted in nothing except additional labor and expense. To be candid, it would have been a senseless proceeding, in our opinion.

The next error relied upon is more serious. A jury trial was demanded in behalf of each and all of the children. Sub. (4), sec. 48.01, Stats., provides that

"In the trial in a juvenile court of any dependent or delinquent child, any person interested may demand a jury of six persons, or the judge of his own motion may order such jury, to try the case."

Sub. (1) (a) of the same section provides:

"The words 'dependent child' and 'neglected child' shall mean any child under the age of sixteen years, who for any

reason is destitute or homeless, or abandoned or dependent upon the public for support; or has not proper parental care or guardianship; or who habitually begs or receives alms; or who is found living in any house of ill fame, or with any vicious or disreputable person, or whose home by reason of neglect, cruelty or depravity on the part of its parents, guardian or other person in whose care it may be, is an unfit place for such child; or any child under the age of eight years who is found begging, or singing or playing any musical instrument upon the street for gain or is used in aid of any person so doing."

Some confusion evidently results from the fact that the words "dependent child" and "neglected child" are by sub. (1) (a) described to mean the same thing, while in sub. (4), providing for a jury trial, the words "neglected child" are omitted. Sub. (4) would more nearly harmonize with the rest of the section if it provided for a jury trial for any "neglected," "dependent," or "delinquent" child. However, in view of the fact that the words "dependent child" and "neglected child" are defined to mean one and the same thing, the words "dependent child" used in sub. (4) of necessity include the words "neglected child." The statute, therefore, plainly provides for a jury trial in a case such as this, a right to which the children in this case were entitled upon demand therefor. Having been deprived of this valuable right, it cannot be said that they had a lawful trial, and for the error resulting from the denial of a jury trial the judgment must be reversed.

*By the Court.*—Judgment reversed, and cause remanded for a new trial.