[Cr. No. 248]

THE STATE OF NORTH DAKOTA, EX REL. CITY OF
MINOT, ET AL., Petitioners v. HONORABLE A. J.
GRONNA, JUDGE OF THE DISTRICT COURT, WARD
COUNTY, STATE OF NORTH DAKOTA, IN AND FOR
THE FIFTH JUDICIAL DISTRICT OF THE STATE
OF NORTH DAKOTA, ET AL., Respondents.

(59 NW2d 514)

Opinion filed June 5, 1953.   Rehearing denied June 20, 1953

*Bosard & McCutcheon,* for petitioners.
*Duane R. Nedrud,* for respondents.

CHRISTIANSON, J.   The City of Minot, the Chief of Police of the city and the Police Magistrate of the city have applied to this Court for a supervisory writ to review and annul the action of the Honorable A. J. Gronna, Judge of the District Court of Ward County, in issuing writs of habeas corpus upon the petition of Arthur Helland and upon the petition of Thomas Smith for such writ and the making of orders discharging and releasing the said Arthur Helland and Thomas Smith from the custody of the Chief of Police of the City of Minot.

The material facts are undisputed.   In the evening of August 11, 1952, Arthur Helland and Thomas Smith were arrested by an officer of the police department of the City of Minot and charged with disorderly conduct, an offense under the ordinances of the City of Minot.   On the morning of August 12, 1952, the police officer having them in charge brought them before the police magistrate of the City of Minot.

The entries in the docket of the police magistrate recite that on the 11th day of August, 1952, verified complaints were filed before such police magistrate against Arthur Helland and against Thomas Smith; that the complaint against each of them alleged "that on the 11th day of August, 1952, the above named defendant did commit the offense of Disorderly Conduct in violation of Section No. 201, Chapter No. 9 of the Revised Ordinances of the City of Minot.   Warrant issued and delivered to Police Officer of said city for service.   August 12, 1952, Defendant before me in custody.   The complaint was read to defendant and

he was informed of his rights. Defendant plead guilty. Whereupon it is ordered and adjudged that said defendant be confine in the City Jail in the city of Minot, ND, for a period of 10 days and pay a fine of $5, and the costs of this action taxed at the sum of $5, and in default of the payment of said fine and costs, that he be imprisoned in the City jail at the City of Minot, ND, for a term of 10 days at labor on the public streets or any public works in said City of Minot, commencing at 9:00 o'clock in the forenoon this 12 day of Aug. 1952, and that he stand committed to the custody of the Chief of Police of the City of Minot, ND, until this sentence is complied with or until he is legally discharged."

After such sentences had been pronounced and judgments rendered Arthur Helland and Thomas Smith were at once incarcerated in the City Jail of the City of Minot. On that same day each of them petitioned the Honorable A. J. Gronna, Judge of the District Court of Ward County, for a writ of habeas corpus. Writs were issued and hearings had before the said Judge Gronna on that day. On such hearings it was established without dispute that each of the said petitioners, Arthur Helland and Thomas Smith, was only sixteen years of age. It was the contention of said Arthur Helland and Thomas Smith that they were illegally restrained; that the police magistrate was without authority to render judgment of imprisonment against either of them and that the jurisdiction over both of the defendants was vested in the juvenile court of said Ward County. The City of Minot and the chief of police contended that under the provisions of Sec 113 of the Constitution of North Dakota the police magistrate was vested with power and authority to pronounce sentence and render judgment against each of the defendants. The district court held that the police magistrate had no authority to try the cases against Arthur Helland and Thomas Smith and to pronounce sentence and render judgment of imprisonment in the city jail and that consequently they were illegally imprisoned and deprived of their liberty and issued orders commanding the chief of police to discharge them from custody. Thereupon the City of Minot, the chief of police of the city and the police magistrate applied to this Court for the

exercise of its power of superintending control over inferior courts vested in it by Sec 86 of the Constitution of the State. State ex rel. Johnson v. Broderick, 75 ND 340, 27 NW2d 849. And the matter came on to be heard before this Court pursuant to an order to show cause why the orders made by Judge Gronna directing the discharge of Arthur Helland and Thomas Smith should not be set aside. The district court made its return, and arguments were presented in behalf of the relators and in behalf of Arthur Helland and Thomas Smith. Upon such hearing there was submitted the record of the proceedings had before the police magistrate and there was also submitted an affidavit of the police magistrate wherein it is said: "That on the 12th day of August, 1952, Arthur Helland, Thomas Smith and Charles Miller appeared before said Police Magistrate pursuant to formal complaint filed with such magistrate by which Complaints they and each of them were charged with Disorderly Conduct, to-wit: The breaking of a plate glass window in the Goldberg Furniture Company in the City of Minot; that Charles Miller was alleged to be twenty (20) years of age, Arthur Helland Sixteen (16) years of age and Thomas Smith sixteen (16) years of age; that each of the said Defendants were separately charged and each was separately advised of his rights under the law and thereupon and thereafter each of the said Defendants pleaded guilty to the said charge and each was adjudged to serve a term of ten (10) days in the City Jail, paying a fine of Five Dollars ($5.00) and costs in the sum of Five Dollars ($5.00); in default of the payment of such fine and costs that the said Defendants and each of them would serve a term of ten (10) days in the City Jail."

The juvenile court law of this state was originally enacted as Chapter 177, Laws 1911. "As originally introduced, the bill creating the court, conferred jurisdiction of delinquent juveniles upon the county court. In the course of passage, the bill was amended so as to continue this jurisdiction in the district court, sitting and acting as a juvenile court." (See State ex rel. Neville v. Overby, 54 ND at p 304, 209 NW at p 556.) Such change was made after objections had been made to the bill as originally written on the ground that the bill called for the exercise of

equity powers, that the county court was not vested with such powers but that such powers were vested in the district court. This view was later vindicated by the decision of this Court in Mead v. First National Bank of Lansford, 24 ND 12, 138 NW 365. In the decision in that case this Court held that the provision in Sec 111 of the Constitution of North Dakota that "said county court shall have concurrent jurisdiction with the district courts in all civil actions" did not operate to confer upon a county court with increased jurisdiction jurisdiction in equity cases. The holding in the case is epitomized in the syllabus which reads as follows:

"Section 111 of the state Constitution construed, and *held, that county courts of increased jurisdiction are not vested with equity powers,* but that their jurisdiction is restricted to actions formerly cognizable at law wherein the amount in controversy does not exceed $1,000." (Italics supplied)

In the course of the codification of the laws of this state (NDRC 1943), the juvenile court law was rewritten and re-enacted as Laws 1943, Chapter 212. The bill for the enactment was introduced in the Senate by Senators Striebel and Kehoe, the Senate members of the Interim Commission on Code Revision which had been created by the Legislative Assembly. See Senate Concurrent Resolution H, Senate Journal 1941, p 147 et seq; Laws of North Dakota 1941, pp 608–609; Senate Journal 1941, p 922. The measure was entitled "A Bill for an Act Relating to the Juvenile Court and the Protection, Control, and Custody of Children; and amending and re-enacting Chapter 23 of the Code of Criminal Procedure, consisting of Sections 11402 to 11427, inclusive, of the Compiled Laws of North Dakota of 1913; Sections 11412a, 11428a1, 11428a2, 11428a3, 11428a4 and 11428a5 of the Supplement to the 1913 Compiled Laws of North Dakota; and Chapter 113 of the Laws of 1929." The measure contained a general repeal clause that "all acts and parts of Acts in conflict with the provisions of this chapter are hereby repealed." Said Chapter 212, Laws 1943, was embodied in the North Dakota Revised Codes of 1943 as Chapter 27–16 and such chapter constitutes the present juvenile court law of this state. Such law provides:

"The district court of the several counties of this state shall have original jurisdiction in all cases coming within the provisions of this chapter. The court for convenience shall be called 'the juvenile court.' As far as possible, said court shall be held at chambers." NDRC 1943, 27–1601.

The law provides for the appointment by the judges of each judicial district of juvenile commissioners and the powers of such commissioners (27–1602); for the compensation of such commissioners (27–1603); for reports of juvenile commissioners (27–1604); for records to be kept by the juvenile commissioner (27–1605); that the clerk of the district court shall be clerk of the juvenile court, shall keep all papers including findings and shall enter all final orders in a book known as the juvenile court record, and that the records and papers shall be subject to examination by the clerk, the judges of the court and the juvenile commissioner, but that others may examine such records and papers only upon the written order of one of the judges (27–1606).

27–1607. "In this chapter, unless the context or subject matter otherwise requires:

1. 'The court' means the juvenile court;

2. 'The judge' means one of the judges of the juvenile court;

3. 'Child' means a person less than eighteen years of age; . . . ."

27–1608. "Except as otherwise provided by law, the court shall have original jurisdiction in all proceedings:

1. Concerning any child residing in or who is temporarily within the county: a. Who has violated any city or village ordinance or law of this state or of the United States; . . . .

2. Concerning any person under twenty-one years of age residing within the county charged with having violated any city or village ordinance or law of this state or of the United States prior to having become eighteen years of age;

3. Concurrent jurisdiction with the district court, county court with increased jurisdiction, and justice or police magistrate court, over any person between the ages of eighteen and twenty-one years residing within the county charged with having vio-

lated any city or village ordinance or any law of this state or of the United States; . . . ."

27–1609. "If any child is arrrested with or without a warrant, such child instead of being taken before the justice, police magistrate, or county court of increased jurisdiction shall be taken immediately to the juvenile court where all proceedings with reference to said child shall be conducted as provided by this chapter."

27–1610. "All children within the provisions of this chapter, for the purposes of this chapter only, shall be considered 'wards of the state', and their persons shall be subject to the care, guardianship, and control of the court as provided in this chapter. At the discretion of the court, such care, guardianship, and control may be continued until the ward shall have attained the age of twenty-one years. The provisions of this chapter shall not change the age of minority for any purpose other than that of awarding the custody of the child."

27–1613. "When any child, fourteen years of age or older, is charged with commission of an offense, a judge of the juvenile court, in his discretion, may permit such child to be proceeded against in accordance with the laws or ordinances which may be in force governing such offense."

27–1621. "If the court shall find that the child is within the provisions of this chapter, it shall so decree and, by order duly entered, may proceed as follows:

1. Place the child under supervision in his own home or in the custody of a relative or other proper person, upon such terms as the court shall determine;

2. Commit the child to a suitable public institution or agency or to any private institution or agency for the care of children approved and licensed by the duly authorized state board, or place such child in a suitable private home; or

3. Order such further care and treatment as the court may deem to be for the best interests of the child, except as otherwise provided in this chapter.

No adjudication upon the status of any child within the jurisdiction of this court shall operate to impose any of the civil disabilities ordinarily resulting from conviction, nor shall any

child be deemed a criminal by reason of such adjudication, nor shall such adjudication be deemed a conviction. The disposition of a child or any evidence given in the court shall not be admissible as evidence against the child in any case or proceeding in any other court, nor shall such disposition or evidence operate to disqualify a child in any future civil service examination, appointment, or application. Whenever the court shall commit a child to any institution or agency, it shall transmit, with the order of commitment, a summary of all of its information concerning such child."

27–1625. "In any proceeding brought under the provisions of this chapter, the court, in any case where the child is not represented by any person, may appoint a guardian ad litem to appear and act on behalf of said child."

27–1631. "No publication of the name of any child under the jurisdiction of this court shall be made by any newspaper except as contained in process of the court and published by order of the court. Any violation of the provisions of this section shall subject the news reporter and publisher of any newspaper so violating the same to be cited for civil contempt and to be punished therefor." NDRC 1943, 27–1631.

27–1633. "The judges of the judicial district may appoint juvenile officers to assist in carrying out the provisions of this chapter, and may require any child under the jurisdiction of this court to report regularly to a juvenile officer. . . . NDRC 1943, 27–1633.

In Encyclopaedia Britannica it is said:

"The juvenile court as a distinct organization originated in America but takes its root in legal and philosophical assumptions current in the 19th century. Its immediate aim was to preserve children from the abuses of criminal procedure. Its principles involve a revolutionary change of attitude. . . . At first there was no thought of modifying court procedure. The idea was stressed that after conviction the confinement should be apart from adult criminals. . . . In 1899 the first juvenile court was organized (Cook County, Chicago, Ill.). It brought under one jurisdiction children who violated laws and dependent children, provided identical procedure for both, established pro-

bation, decreed that adjudication be deemed not a conviction of crime, but the placing of the child in the relation of ward to the State. The care for the delinquent child was to 'approximate as nearly as may be that which should have been given by the parents.' Instead of warrant of arrest, examination by a police judge, bail, indictment, jury trial and sentence, there was substituted complaint, investigation by probation officer, petition, informal hearing and commitment. Fines, imprisonment and penal treatment were abolished. The movement spread with rapidity. By 1904 ten States had juvenile courts; after the first ten years, 1914, 30 States; and in 1928 only two States (Wyoming and Maine) were without juvenile courts." . . .

"The juvenile court principle is, first, that the child is not an ungrown adult, but a distinct being, physicially, mentally, emotionally and socially; the child's response to life is different; secondly, that the State should not proceed against the child as prosecutor, but exercise the chancery power of parens patriae to protect the child." 5 Encyclopaedia Britannica, 14th ed., (Children's Courts), pp 477–478. (Since the above was written both Maine and Wyoming have provided for Juvenile Courts, Rev Stat Maine 1944, Ch 133; Comp Stat Wyoming, 1945, 58–601, 58–602).

The history of this state discloses that what is said in the Encyclopaedia Britannica applies to the legislation that was enacted in this state relating to children charged with the commission of acts which would render an adult subject to punishment.

In the Constitution of this state, adopted in 1889, provision was made for the establishment of a State Reform School in the City of Mandan. ND Const, Sec 215. Section 215 of the Constitution was amended by constitutional amendment approved by the electors of the State at the General Election on November 2, 1920, to change the name of the State Reform School to State Training School. Laws of North Dakota 1919, Chapter 94; Laws of 1921, Constitutional Amendments, Art 38, pp 259–260. In the Enabling Act provision had been made for a grant by the United States of America of 40,000 acres of land for the support of such school. Enabling Act, Sec 17. At the first session of the First Legislative Assembly in the State of

North Dakota provision was made for the government and operation of such Reform School. Laws 1890, Ch 164. The provisions of said Chapter 164 were codified and embodied in the Revised Codes, of North Dakota 1895. Certain provisions of the law were embodied in Sec 8582 of the Revised Codes of North Dakota 1895 which read as follows:

"Whenever any person under the age of eighteen years shall be convicted of any crime or public offense before a justice of the peace or court other than a district court of the state, or of being a disorderly person, such justice of the peace or other court, must forthwith send such person together with all the papers relating to the charge on file in his office, and a certified transcript of his docket entries in the action, under the charge of some peace officer, to the judge of the district court of the county. The judge shall thereupon issue an order to the parent or guardian of the accused, or to such person as may have had him in charge, or with whom he last resided, or to some person nearly related to him, if known or if there is no such person known, then to some person to be designated in the order to act as guardian for the accused for the time being, requiring such parent or other person to appear at a time and place stated in such order and show cause why the accused should not be committed to the reform school. . . ." Revised Codes of North Dakota, 1895, Sec 8582.

The above quoted provision was embodied in Sec 8582 Revised Code of North Dakota 1899 and again in Sec 11283, Compiled Laws of North Dakota for 1913. However, in the decision in State ex rel. Neville v. Overby, 54 ND 295, 209 NW 552, in construing the juvenile court act enacted in 1911, this Court said that this section "is probably superseded by the provisions of the juvenile court law, which deprive justices of the peace and police magistrates of jurisdiction to try and sentence offenders under eighteen years of age." 54 ND at p 305, 209 NW at p 556. And such provision was not included in NDRC 1943, but was omitted because it was deemed to have been superseded. See Vol 6, North Dakota Revised Code of 1943, pp 4493, 4598.

The Juvenile Court Law enacted in 1911 (Laws 1911, Ch 177) provided that "all dependent, neglected and delinquent children

under the age of eighteen years, shall, for the purpose of this act only, be considered wards of this state and their persons shall be subject to the care, guardianship and control of the court as hereinafter provided." (Sec 1) The Act further provided that "the word 'delinquent child' shall mean any child who while under the age of eighteen years violates any law of the state; . . . ." (Sec 2) That "the district courts of the several counties in this state shall have original jurisdiction in all cases coming within the terms of this act." (Sec 3) That "the court may for convenience, be called the 'Juvenile Court,' and as far as possible the said court shall be held in chambers." (Sec 4) That "the court may in its discretion in any case of a delinquent child permit such child to be proceeded against in accordance with the laws that may be in force in this state governing the commission of crimes or violation of city, village, or town ordinances; . . . ." (Sec 11) It further provided: "if any child under the age of eighteen years is arrested with or without warrant, such child shall instead of being taken before a justice of the peace or police magistrate, be given into the care of a juvenile officer of said county, and the officer having the child in charge shall take the child before such juvenile court, and in any case the county (district) court may proceed to hear and dispose of the case in the same manner as if the child had been brought before the court upon petition as herein provided. . . . ." (Sec 15) The act contained the following repealing clause: "This act shall be construed to repeal existing laws in conflict with this act under and by which dependent, neglected and delinquent children as defined by this act might be arrested, complained against, committed, confined or taken into or placed in custody, in justice courts or police courts, but as to all other laws it shall be construed as cumulative and not as exclusive." (Sec 27)

Aside from a minor change made in 1913, relating to dependent, and neglected children (Laws 1913, Chapter 68), the juvenile court law as enacted in 1911 remained as enacted and the above quoted provisions remained in force and were embodied in the Compiled Laws of North Dakota for 1913. CL 1913, Sections 11402–11428. As has been said, thereafter, in the course of

codification of the laws of this state (NDRC 1943) the juvenile court law was rewritten and enacted as Chapter 212, Laws 1943. That act was entitled "An Act Relating to the Juvenile Court and the Protection, Control, and Custody of Children; and amending and re-enacting" (following this the then existing provisions of the laws of the State of North Dakota relating to juvenile courts are specifically enumerated). Chapter 177, Laws 1911, provided that "all dependent, neglected and delinquent children under the age of eighteen years, shall, for the purpose of this act only, be considered wards of this state," (Sec 1), and defined the terms "dependent child," "neglected child," and "delinquent child." Chapter 212, Laws 1943, eliminated any reference to delinquent, dependent and neglected children and provided instead that within the terms of that act " 'child' means a person less than eighteen years of age," and provided that the juvenile courts "shall have original jurisdiction in all proceedings; (1) concerning any child residing in or who is temporarily within the county: a. Who has violated any city or village ordinance or law of this state or of the United States;" or who has committed any of the other acts or is in any of the situations specified in the act. Chapter 212, Laws 1943, Sec 8; NDRC 1943, 27-1608(1).

Said Chapter 212, Section 8(3) further provided that the juvenile court shall have "concurrent jurisdiction with the district court, county court with increased jurisdiction, justice or police magistrate court, over any person between the ages of eighteen and twenty-one years . . . charged with having violated any city or village ordinance or any law of this State or of the United States." Laws 1943, Chapter 212, Sec 8(3); ND RC 1943, 27-1608(3). No similar provision was contained in the former law. The former law provided that the juvenile court "may in its discretion in any case of a delinquent child permit such child to be proceeded against in accordance with the laws that may be in force in this state governing the commission of crimes or violation of city, village, or town ordinances; . . . ." Laws 1911, Chapter 177, Sec 11. Chapter 212, Laws 1943, provided that "when any child, *fourteen years of age or older,* is charged with the commission of an offense, a judge of this court

may, in his discretion, permit such child to be proceeded against in accordance with the laws or ordinances that may be in force governing such offense." Laws 1943, Chapter 212, Sec 13; NDRC 1943, 27–1613. · The former law provided that "if any child under the age of eighteen years is arrested with or without warrant, such child shall instead of being taken before a justice of the peace or police magistrate, be given into the care of a juvenile officer of said county, and the officer having the child in charge shall take the child before such juvenile court, and in any case the county (district) court may proceed to hear and dispose of the case in the same manner as if the child had been brought before the court upon petition" as provided in the act. Laws 1911, Chapter 177, Sec 15. Chapter 212, Laws 1943, provided "if any child is arrested with or without a warrant, such child instead of being taken before the justice, police magistrate, or county court of increased jurisdiction shall be taken immediately to the Juvenile Court where all proceedings with reference to said child shall be conducted as provided by this chapter." Laws 1943, Chapter 212, Sec 9; NDRC 1943, 27–1609. Chapter 212, Laws 1943, did not contain a repeal clause such as that contained in Chapter 177, Laws 1911,—and later embodied in Sec 11428, CL 1913,—but said chapter 212 contained a general repealing clause that "all acts and parts of Acts in conflict with the provisions of this chapter are hereby repealed." Laws 1943, Chapter 212, Sec 34.

In State ex rel. Neville v. Overby, supra, this Court had occasion to construe the original juvenile court law of this state. In that case a criminal complaint was filed with the police magistrate of the City of Grand Forks charging one Neville with commission of the crime of grand larceny. A warrant was issued and Neville was arrested thereunder, brought before the police magistrate, and given a preliminary examination and held to answer in the district court. He was admitted to bail which was furnished. Later a criminal information was filed in the district court of Grand Forks County by the State's attorney of that county charging Neville with the crime of grand larceny. He was arraigned and entered a plea of guilty. Thereupon he was sentenced by the presiding judge of the district court and

committed to the State Training School. Neville through his parents petitioned the judge of the district court of Grand Forks County for a writ of habeas corpus alleging that the proceedings in which he had been arrested, tried and sentenced were void for the reason that at the time such proceedings were had he was under the age of eighteen years. The district judge denied the petition and thereupon the parents of John Neville petitioned this Court for a writ of habeas corpus, alleging that at the time the proceedings were had against Neville before the police magistrate and in the district court and at the time sentence was pronounced and judgment of conviction rendered in the district court he was under the age of eighteen years. That at the time of the arrest and at the preliminary examination the police magistrate and the chief of police knew that he was under the age of eighteen years and that the State's attorney who prosecuted the action against him in the district court and the judge of the district court who presided and pronounced sentence and rendered judgment knew that he was under the age of eighteen years; and that consequently the proceedings had, the sentence pronounced and the judgment rendered were without jurisdiction and void. This court held that the repealing clause in Chapter 177, Laws 1911, evidenced a legislative intention not to repeal but to leave in force the provisions of law in existence when said Chapter 177, Laws 1911, was enacted, conferring jurisdiction on the district court of criminal offenses and trials of persons charged with the commission of felonies including persons under the age of eighteen years; that the unusual terms of the repealing clause and the history of the enactment evidenced a legislative intention to leave unimpaired the jurisdiction of the district court under such former laws. That errors in the proceedings did not operate to deprive the district court of jurisdiction. In the original opinion in that case this Court said:

"The district court has jurisdiction over all criminal offences and exclusive original jurisdiction over all felonies, and of all persons brought therein, charged with the commission of crime. The juvenile court act does not deprive the district court of jurisdiction in criminal causes; it specifically states in the re-

pealing clause that it is cumulative and not exclusive as to all law, excepting only the law as administered in justice and police courts." 54 ND at p 300.

"Section 11,416, which required the officer making the arrest to give into the care of a juvenile officer all children arrested under eighteen years of age, is to prevent children of tender years from being thrown into jail with hardened criminals and is in harmony with the object and purpose of the juvenile act.

"The juvenile court is not a criminal court and it is the purpose of the law to treat juvenile offenders under eighteen years of age not as criminals, but as far as practicable to give them the paternal care of the home, to save them from the stigma attaching to crime, to guard and protect them against themselves, and all evil-minded persons.

"We are not concerned with the question of the jurisdiction of police magistrate and justices of the peace over juvenile offenders against the law. The persons in whose behalf the writ of habeas corpus is prosecuted, are not held by virtue of a commitment issued by the police magistrate or justice of the peace; they are held by virtue of a judgment of conviction of a felony in the district court which has exclusive jurisdiction over such offenses." 54 ND at p 302.

In the opinion on petition for rehearing this Court said:

*"The legislative intent, with respect to the arrest of juvenile offenders, is so clearly expressed in Sec 11,416, Comp Laws 1913, that no comment seems necessary. To bring a juvenile, under the age of eighteen years, before a justice of the peace or a police magistrate for the purpose of a preliminary examination is in manifest defiance of the statute.* The act specifically provides that a child under eighteen years, if arrested, shall *not* be taken before such an officer, but shall be 'given into the care of a juvenile officer of said county.' In the cases before us, as said by the counsel for the petitioner, the proceedings before the magistrate were wholly irregular and contrary to the statute; and it was the plain duty of the officers, including the state's attorney, who had any connection with their arrest, to give the bays 'into the care of the juvenile officer of' Grand Forks county.

The fact remains however, that errors in these respects do not amount to such jurisdictional defects as justify the issuance of the writ of habeas corpus.

"Primarily, jurisdiction over juvenile offenders is in the district court, sitting as a juvenile court. Of this, all police officers and state's attorneys should take notice. The juvenile court has the discretionary power to order a criminal prosecution in the usual course. Comp Laws 1913, Sec 11,412." (Italics supplied) 54 ND at p 306.

"The legislative purpose is clearly evidenced by the repeal clause. *There the intent to divest justice courts and police courts of all jurisdiction is made unmistakably clear; on the other hand the purpose not to divest the district court of jurisdiction is equally manifest.* All statutes giving the police and the justice courts jurisdiction over juvenile offenders are expressly declared to be repealed; but as to all other laws, like for example, Sec 11,281, supra, the juvenile act is supplementary and not a repeal—'cumulative and not . . . exclusive.'" (Italics supplied) 54 ND at p 307.

What was said by this Court in State ex rel. Neville v. Overby, supra, with respect to the want of jurisdiction of a police magistrate over a delinquent child under the age of eighteen years, and the duty of a policeman, who has arrested such child either with or without a warrant, instead of taking such child before the police magistrate to give such child into the care of a juvenile officer of the county, is applicable in this case under the present juvenile court law. The present law provides that if any child is arrested with or without a warrant such child instead of being taken before the police magistrate shall be taken immediately to the juvenile court where all proceedings with reference to said child shall be conducted as provided in said juvenile court law. NDRC 1943, 27–1609. As has been pointed out the title to the present juvenile court law (Laws 1943, Ch 212) recited that it was "An Act Relating to the Juvenile Court and the Protection, Control and Custody of Children; and amending and re-enacting" all the then existing provisions of the juvenile court laws of this state. Presumptively, said Chapter 212, Laws 1943, was enacted with knowledge of, and in the light of,

the decision in State ex rel. Neville v. Overby, supra; and the language of the act indicates that the legislature had no intention. to depart from the construction that had been given to the former law by this Court in State ex rel. Neville v. Overby. The lawmakers indicated their approval of such construction and their intention to reenact the statute as so construed. 59 CJ Sec 613, pp 1036–1037. The language of said Chapter 212 leaves no doubt as to the legislative purpose and intent to forbid that a "child" as defined in the act should be brought before a police magistrate for trial or sentence for violation of an ordinance of the city but that if any such child is arrested for such violation "with or without a warrant, such child instead of being taken before the . . . police magistrate . . . shall be taken immediately to the juvenile court where all proceedings with reference to said child shall be conducted as provided by this chapter." NDRC 1943, 27–1609. In the next section the law provides that "all children within the provisions of this chapter, for the purposes of this chapter only, *shall be considered 'wards of the state', and their persons shall be subject to the care, guardianship, and control of the court as provided in this chapter."* NDRC 1943, 27–1610. (Italics supplied)

Indeed, there is no contention that there was any intention on the part of the legislature to vest the police magistrate with jurisdiction to try and sentence a child who has violated a city ordinance or to render judgment of conviction or pronounce sentence upon such child. On the contrary it is conceded that the juvenile court law prohibits a police magistrate from performing such acts and it is contended that the prohibition of the police magistrate from performing such acts renders the statute unconstitutional. In short, the contention of the petitioners is that the juvenile court law contravenes the provisions of Sec 113 of the Constitution of the State which section so far as material here provides that "the legislative assembly shall provide by law for the election of police magistrates in cities, incorporated towns, and villages, who in addition to their jurisdiction of all cases arising under the ordinances of said cities, towns and villages, shall be ex officio justices of the peace of the county in which said cities, towns and villages may be located." There is

no contention that the juvenile court law violates any other constitutional provision. On the contrary it is asserted that the law is unconstitutional only insofar as it purports to interfere with and deprive the police magistrate of jurisdiction to try and determine cases where a child under the age of eighteen years of age is charged with violating an ordinance of a city and to pronounce sentence and render judgment of conviction in such cases.

In the petitioners' brief it is said that "petitioners allege that the statute relied upon by the attorney for the respondents is unconstitutional insofar as it attempts to invade the jurisdiction of police magistrate in violations of municipal ordinances." It is further said: "It should be borne clearly in mind that the petitioners in this action do not challenge the constitutionality of the Juvenile Act in any way except in as it is applied to municipalities and the police magistrate thereof. We believe that this law is unconstitutional in part but that such unconstitutionality does not affect the remainder of the statute; that if the unconstitutional portion is deleted nevertheless the remainder of the statute is sufficient and complete to operate within the areas wherein it may operate." It is also said that the "respondents (petitioners) do not contend that Sec 27–1601 et seq of the NDRC 1943 is unconstitutional in any other respect except as applied to municipalities and police magistrates thereof."

It is a general principle that cities hold and exercise their powers subject to legislative control and the legislative authority over the political and governmental powers of a city is supreme except as limited by the State and Federal Constitutions. 37 Am Jur p 689.

"In general, the functions, powers, and privileges of municipal corporations may be changed or modified at the discretion or pleasure of the legislature creating them; they may be increased or extended, or, on the other hand, they may be restricted, diminished, or withdrawn." 62 CJS 340, 341.

The Constitution of this state contains no provision for what is commonly known as a "home-rule" charter, or any grant of right of self-government to cities. On the contrary the Consti-

tution prohibits the legislative assembly from passing any local or special laws for the incorporation of cities, towns or villages or changing or amending the charter of any city, town or village. N Dak Const, Sec 69, subd 33. The Constitution further provides: "The legislative assembly shall provide by general law for the organization of municipal corporations restricting their powers as to levying taxes and assessments, borrowing money and contracting debts, and money raised by taxation, loan or assessment for any purpose shall not be diverted to any other purpose except by authority of law." N Dak Const, Sec 130.

Under the Constitution of this state cities "are creatures of the statute and of the statute alone." State ex rel. Shaw v. Frazier, 39 ND 430, 444, 167 NW 510. And the legislature has the power to define the powers of cities and to prescribe the manner of their exercise. Stark v. City of Jamestown, 76 ND 422, 448, 37 NW2d 516, 530.

"The state may withhold, grant or withdraw powers and privileges as it sees fit. However great or small its sphere of action, it remains the creature of the State exercising and holding powers and privileges subject to the sovereign will." Trenton v. New Jersey, 262 US 182, 187, 67 L ed 927, 941, 43 S Ct 534, 29 ALR 1471. A city "is the creature of the legislature, and its rights, powers and duties are fixed by the will of its creator." North Fargo v. Fargo, 49 ND 597, 605, 192 NW 977, 979. In Waslien v. City of Hillsboro, 48 ND 1113, 1118, 188 NW 738, this Court said:

"In this state, cities are incorporated through general law of the legislature. They are mere creatures of the statute. State ex rel. Shaw v. Frazier, 39 ND 430, 434, 167 NW 510. They are political subdivisions of the state, auxiliaries for purposes of local government exercising a part of the powers of the state. They may be created, or, after creation, their powers may be restricted or enlarged or altogether withdrawn at the will or discretion of the legislature. . . . This legislative power is primarily plenary; the constitution is not a grant of, but a restriction upon, that power." See, also, Sitte v. Paulson, 56 ND 146, 216 NW 344.

In Fargo v. Sathre, 76 ND 342, 36 NW2d 39, this Court had

occasion to consider the validity and effect of a statute adopted pursuant to initiative petition prohibiting cities from establishing and maintaining parking meters requiring the deposit therein of coins where automobiles were parked on the streets of a city and invalidating ordinances previously enacted providing for parking meters. The City of Fargo had expended considerable sums of money in establishing parking meters, and the validity of the statute was challenged on many grounds. This Court held (Syl 6, 76 ND at p 343) that "the initiated statute . . . is a valid enactment and its effect is to void and nullify all ordinances of cities inconsistent with its provisions." In the opinion in the case this Court said in part:

"Cities and other political subdivisions of the state are merely agencies of the state. Such powers as they have are conferred upon them by the people of the state either by way of legislative enactment or through the initiative. Having been thus conferred they may be modified or taken away. See State ex rel. Linde v. Taylor, 33 ND 76, 156 NW 561, LRA1918B 156, Ann Cas 1918A 583, where this court quoted with approval from the case of Atkin v. Kansas, 191 US 207, 48 L ed 148, 24 S Ct 124, as follows:

" 'Such corporations are the creatures, mere political subdivisions, of the state, for the purpose of exercising a part of its powers. They may exert only such powers as are expressly granted to them, or such as may be necessarily implied from those granted. What they lawfully do of a public character is done under the sanction of the State. They are, in every essential sense, only auxiliaries of the State for the purposes of local government. They may be created, or, having been created, their powers may be restricted or enlarged or altogether withdrawn at the will of the legislature; the authority of the legislature, when restricting or withdrawing such powers, being subject only to the fundamental condition that the collective and individual rights of the people of the municipality shall not thereby be destroyed.'

"See also Lang v. Cavalier, 59 ND 75, 228 NW 819 and cases cited; State ex rel. Dreyer v. Brekke, 75 ND 468, 28 NW2d 598. Plaintiffs' challenges of unconstitutionality must be considered

in the light of this relationship between the State of North Dakota and its cities."

It is apparent that the legislative assembly has full control over any ordinance that may have been enacted by any of the cities in this state. Under the constitution a city has no inherent power to enact any ordinance. It has no authority to enact an ordinance unless and until authority to do so has been granted by law and the grant of power to cities to enact ordinances does not operate as a surrender of legislative power. 62 CJS p 359. The legislature may at any time it sees fit so to do withdraw the power it has granted to enact such ordinance or it may enact a general law in conflict with the provisions of an ordinance which has been enacted by the city under the former grant of power and in such case the provisions of the ordinance in conflict with the statute are superseded and rendered invalid.

In McQuillin on Municipal Corporations it is said:

"A general statute relating to matters of state-wide concern ordinarily repeals, and is construed to repeal, previously existing local ordinances in conflict with it." 6 McQuillin on Municipal Corporations, 3rd ed, p 246.

"It is a general requisite to the validity of an ordinance that it conform to, and not violate, general statutes, and, consistently, a general statute repeals an earlier ordinance with which it is repugnant, unless contrary legislative intention is manifested. Conversely, an ordinance does not and cannot supersede an earlier general statute. In other words, in case of conflict the ordinance is void. Indeed, attached to every statute, every charter, every ordinance or resolution affecting, or adopted by, a municipality is the implied condition that the same must yield to the predominant power of the state, when that power has been exercised. . . .

"Unquestionably, within its constitutional powers the legislature may modify or repeal municipal ordinances. Such repeals need not be in express terms. If the intention to repeal clearly appears, the ordinance must give way to the legislative act so far as it is in conflict with it. Thus an ordinance is impliedly repealed by a later valid statute on the same subject

which is incompatible with it." 6 McQuillin on Municipal Corporations, 3rd ed, Sec 21.32, p 237 et seq.

"It is a fundamental principle that municipal ordinances are inferior in status and subordinate to the laws of the state. An ordinance in conflict with a state law of general character and state-wide application is universally held to be invalid. The principle is frequently expressed in the declaration that municipal authorities, under a general grant of power, cannot adopt ordinances which infringe the spirit of a state law or are repugnant to the general policy of the state." 37 Am Jur, pp 787–788.

There is no contention that the ordinance of the City of Minot involved in this case or any ordinance of the city contains any provision fixing the age above which a person shall be deemed capable of committing an offense by violation of an ordinance or be responsible for such violation and liable to punishment therefor and presumptively the ordinances of the city did not and could not contain such provision.

As has been pointed out, the legislative assembly has full control over what ordinances may be enacted and over ordinances that have been enacted by the cities in this state. The constitution provides that "the legislative assembly shall provide by general law for the organization of municipal corporations restricting their powers as to levying taxes and assessment, borrowing money and contracting debts." ND Const, Sec 130. Ordinances of a city would naturally relate to matters of local concern within the city. The Supreme Court of Minnesota has said: "The true purpose of all municipal ordinances is to regulate local affairs." State v. Mandehr, 168 Minn 139, 209 NW 750. See, also, Fargo v. Glaser, 62 ND 673, 244 NW 905. Employment of children (43 CJS 65) and the care and treatment of neglected and delinquent children are matters of statewide concern and the legislature under the police power may enact such laws with respect thereto as it deems necessary provided they do not contravene any provision of the Constitution of the State or of the Constitution of the United States. 2 McQuillin, Municipal Corporations, 3rd ed, Sec 4.94, p 57; Tiedeman's Limitations of Police Power, Sec 2, p 5 et seq. The age of criminal

responsibility or capacity of an infant to commit a crime (43. CJS 217) and the age at which an infant may make a binding contract (43 CJS 160) are matters of statewide concern. The administration of justice is obviously a state affair rather than a municipal affair. 2 McQuillin, Municipal Corporations, 3rd ed, Sec 4.95, p 158; State ex rel. Dann v. Hutchinson, 206 Minn 446, 288 NW 845. The subject matter of the juvenile court law of this state is not a local affair, it concerns all the people of the State and is a matter of statewide concern.

The constitution contains no provision granting to a city the power to enact any ordinance or ordinances nor does it contain any provision or direction that the legislature shall grant such power or powers to a city. Hence, it is obvious that under the constitution of this state a city has no power to enact any ordinance or ordinances unless it is authorized by legislative enactment so to do, and the authority so granted by legislative enactment may thereafter be qualified or withdrawn and if the legislature enacts a statute which clearly conflicts with ordinances that have been enacted the statute prevails and the conflicting ordinances are superseded and rendered invalid.

The juvenile court law was enacted under the police power of the State. State ex rel. Kronschnabel v. Isenhuth, 34 SD 218, 148 NW 9; Re Johnson, 173 Wis 571, 181 NW 741; Re Hook, 95 Vt 497, 115 Atl 730, 19 ALR 610; State ex rel. Foot v. District Court, 77 Mont 290, 295, 250 Pac 973, 975.

The police power is an attribute of sovereignty inherent in the states of the American union, "and exists without any reservation in the constitution, being founded on the duty of the state to protect its citizens and provide for the safety and good order of society." 16 CJS, Constitutional Law, Sec 175, pp 539–540; 11 Am Jur, Constitutional Law, Sec 245, pp 966–968. The constitution "supposes the pre-existence of the police power, and must be construed with reference to that fact." 11 Am Jur, Constitutional Law, p 969; 16 CJS p 541; Chicago & N. W. R. Co. v. Illinois Commerce Commission, 326 Ill 625, 158 NE 376; 55 ALR 654; Borden v. La. State Bd. of Edu., 168 La 1005, 123 So 655; 67 ALR 1183; Carthage v. Frederick, 122 NY 268, 25 NE 480, 10 LRA 178, 19 Am St Rep 490.

"It is a fundamental principle of constitutional law that in matters relating to the police power each successive legislature is of equal authority. A legislative body cannot part with its right to exercise such power; it inherently has authority to use the power again and again, as often as the public interests may require." 11 Am Jur, Constitutional Law, Sec 254, p 983.

In Neer v. State Live Stock Sanitary Board, this Court said:

" 'The police power' is the power inherent in a government to enact laws, within constitutional limits, to promote the order, safety, health, morals, and general welfare of society. Such power, as pointed out by Mr. Justice Holmes, speaking for the Supreme Court of the United States, in Noble State Bank v. Haskell, 219 US 104, 55 L ed 112, 32 LRA NS 1062, 31 Sup Ct Rep 186, Ann Cas 1912A, 487, may be said, in a general way, to extend to all the great public needs, and 'it may be put forth in aid of what is sanctioned by usage, or held by the prevailing morality, or strong and preponderant opinion to be greatly and immediately necessary to the public welfare.' As applied to the powers of one of the states of the Union, the term 'police power' is also used to denote those inherent governmental powers which, under the system established by the Constitution of the United States, are reserved to the several states. 12 CJ 905. Of course, there is no such thing as a police power which is above the Constitution, or which justifies any violation of express or manifestly implied constitutional prohibitions. State ex rel. Milwaukee Medical College v. Chittenden, 127 Wis 468, 107 NW 500. And, 'however broad the scope of the police power, it is always subject to the rule that the legislature may not exercise any power that is expressly or impliedly forbidden to it by the state Constitution.' 12 CJ 929. But where a subject is within the police power, it is for the legislature to say what the remedy shall be, and a police enactment will be upheld unless it contravenes some constitutional restriction. American Linseed Oil Co. v. Wheaton, 25 SD 60, 41 LRA NS 149, 125 NW 127." 40 ND at pp 369–370.

The legislature has power to define what acts shall constitute criminal offenses and what penalties shall be imposed on offenders; "and generally to enact all laws deemed expedient for the

protection of public and private rights and the prevention and punishment of public wrongs, the expediency of making any such enactment being a matter of which the legislature is the proper judge. It may impose penalties for a violation of its statutory requirements. It may take life, liberty, or property for crime, as long as it keeps within the bounds of the Constitution. So long as its enactments do not infringe constitutional rights and privileges, express or necessarily implied, its will is absolute." 14 Am Jur, 766-767. The legislature has the power to fix the age of criminal responsibility. It, also, has power to say that an act done by a child shall not be a crime or punishable as such even though the same act constitutes crime if done by an adult. People v. Lewis, 260 NY 171, 183 NE 353, 86 ALR 1001.

The Legislative Assembly of the Territory of Dakota fixed the age of criminal responsibility and provided that every child under the age of seven years is conclusively presumed to be incapable of committing a crime but that "children of the age of seven years, but under the age of fourteen years, in the absence of proof that at the time of committing the act or neglect charged against them, they knew its wrongfulness," are also deemed incapable of committing a crime. Penal Code, Dakota Territory 1877, Sec 16(2). This statutory provision was retained in force after statehood (CL 1913, Sec 9207, NDRC 1943, 12-0201) and was construed by this Court in State v. Fisk, 15 ND 589, 108 NW 485, 11 Ann Cas 1061. In the decision in that case this Court said:

"Under the above section, a child under the age of 7 years is conclusively presumed to be incapable of committing a crime. In this respect it is the same as the common law, both of England and this country. Between 7 and 14, called the dubious age of discretion, the child is still presumed to be incapable, but the presumption is not conclusive. The state may overcome the presumption, but to do so, it must show by clear proof that the accused knew the wrongfulness of the act when he committed it. In the absence of such proof the presumption of incapacity must prevail. The burden is upon the state in such cases to prove knowledge of the wrongfulness of the act as an independ-

ent fact.  In this respect the rule is the same as at common law."
15 ND at p 591.

Obviously, the legislature might change the age of criminal
capacity or responsibility.  As was well said by a noted jurist
and legal writer:

"It would seem to be obvious that, if the common law could
fix the age of criminal responsibility at seven, and if the legis-
lature could advance that age to ten or twelve, it can also raise
it to sixteen or seventeen or eighteen, and that is what, in some
measure, has been done.  Under most of the juvenile-court laws
a child under the designated age is to be proceeded against as
a criminal only when in the judgment of the judge of the juve-
nile court, either as to any child, or in some states as to one over
fourteen or over sixteen years of age, the interests of the state
and of the child require that this be done." *The Juvenile Court*,
Judge Julian W. Mack, 23 Harvard Law Review, 104.

By the juvenile court law of this state the legislature has pro-
vided that the juvenile court shall have original jurisdiction in
all proceedings concerning any child "who has violated any city
or village ordinance or law of this state or of the United States;"
(NDRC 1943, 27–1608) that for the purposes of the juvenile
court act all children within its provisions "shall be considered
'wards of the state' and their persons subject to the care, guard-
ianship and control of the court as provided" in the juvenile
court act.  NDRC 1943, 27–1610.  That "when any child four-
teen years of age or older is charged with the commission of an
offense," a judge of the juvenile court "may in his discretion,
permit such child to be proceeded against in accordance with
the laws or ordinances that may be in force governing such
offense." NDRC 1943, 27–1613.  The obvious purpose and ef-
fect of these provisions is to make every "child" less than
eighteen years of age, who has violated any ordinance of a city
or village or law of the state or of the United States, or who has
committed any other act, or is in any situation specified in NDRC
1943, 27–1608, subject in the first instance alone to the jurisdic-
tion of the juvenile court; but when any such "child, fourteen
years or older, is charged with the commission of an offense"
the judge of the juvenile court is vested with discretionary pow-

er to waive the jurisdiction of the juvenile court and "permit such child to be proceeded against in accordance with the laws or ordinances that may be in force governing such offense." NDRC 1943, 27–1613. See, also, 31 Am Jur, Juvenile Courts and Offenders, p 801, Sec 33; 43 CJS pp 234–235.

If the legislature had power to fix the age of criminal capacity or responsibility absolutely, it also had power to fix it conditionally as it did in CL 1913, Sec 9207; and it also had power to provide that when a child who has committed an offense against the laws of the State or of the United States or the ordinances of a city and thus become a ward of the juvenile court the judge of the juvenile court in his discretion may waive the jurisdiction of the juvenile court and permit the child to be proceeded against in accordance with the laws or ordinances which may be in force governing such offense. NDRC 1943, 27–1613; 31 Am Jur, Juvenile Courts and Offenders, Sec 33, p 801; 43 CJS pp 234–235.

In enacting the juvenile court law the legislature was not concerned with fixing the age at which an offender should be deemed capable of committing a crime under a criminal statute or an offense under a penal ordinance. It was not the aim of the act to provide for punishment of such minors but instead "to treat such minors not as criminals but as wards of the state." It was clearly the legislative purpose and intent to provide that acts or conduct of such minors which if committed by an adult would constitute a violation of a criminal statute or a penal ordinance and render the perpetrator subject to prosecution and punishment in proceedings in a court exercising criminal or penal jurisdiction shall not render a "child" as defined in the act subject to such prosecution and punishment but shall instead constitute such offender a ward of the state and as such subject to the jurisdiction of a court vested with and exercising chancery or equity powers. In short, by the juvenile court act the legislature intended to establish and did establish a new system and method of dealing with juvenile offenders and invoked the jurisdiction of a court exercising equity powers to deal with such offenders.

American Jurisprudence says:

"The early criminal law did not differentiate between the adult

and the minor who had reached the age of criminal responsibility
—seven at common law and in some of our states, ten in others,
with a chance to escape up to twelve, if lacking in mentality and
moral maturity. The fundamental thought in our criminal ju-
risprudence was not, and in most jurisdictions is not, reforma-
tion of the criminals, but punishment; and this applied to chil-
dren as well as to adults. Today, however, the thought is that
the child who has begun to go wrong, who is incorrigible, who
has broken a law or ordinance, is to be taken in hand by the
state, not as an enemy, but as a protector, as the ultimate guard-
ian, because either the unwillingness or the inability of the nat-
ural parents to guide him toward good citizenship has compelled
the intervention of the public authorities." 31 Am Jur, Sec 1,
p 784.

"Statutes creating courts having jurisdiction of juvenile de-
linquents, and providing for the procedure therein and the care
and discipline of such delinquents, have been characterized by
the courts as progressive, humanitarian, and beneficial, and
have been referred to as paternal and benevolent. They have
for their object not the punishment of juvenile offenders for
misconduct, criminal or otherwise, but their removal from the
path of temptation and their direction into the paths of rectitude
by preventive and corrective means. Their operation is in-
tended to check the criminal tendency in its inception, and pro-
tect the unformed character in the facile period from improper
environment and influences, to give to the weak and immature
a fair fighting chance for the development of the elements of
honesty, sobriety, and virtue essential to good citizenship, and
to prevent them from growing up to lead idle, dissolute, or
immoral lives. In other words, the welfare of the child lies at
the very foundation of the statutory scheme. A statute of this
nature is an assertion of the state's power as parens patriae and
its right to exercise proper parental control over those of its
minor citizens who are disposed to go wrong." 31 Am Jur, p 785.

"It is not the purpose of the statutes creating juvenile courts
to provide additional courts for the punishment of crime. The
purpose is to establish special tribunals having jurisdiction,
within prescribed limits, of cases relating to the moral, physical,

and mental well-being of children to the end that they may be directed away from paths of crime."

"The basic conceptions which distinguish juvenile courts from other courts can be briefly summarized. Children are to be dealt with separately from adults. Their cases are to be heard at a different time and preferably in a different place; they are to be detained in separate buildings, and if institutional guidance is necessary, they are to be committed to institutions for children. Through its probation officers the court can keep in constant touch with the children who have appeared before it." 31 Am Jur, pp 788–789.

In this state there was no attempt to create a separate court but the juvenile court jurisdiction established by the act was conferred upon an existing court, namely, upon the district court, which court by the Constitution of the State is vested with original jurisdiction in all matters in equity. N Dak Const, Sec 103; Mead v. First National Bank, 24 ND at p 14, 138 NW at p 366. See, also, 30 CJS, Equity, Sec 7, pp 324–325; 31 Am Jur, Juvenile Courts and Offenders, Sec 9, p 789. In so doing the legislature followed the example of a number of other states. The jurisdiction of a court of equity over the person of an infant has long been recognized and firmly established. 19 Am Jur, Equity, p 145, Sec 152. Note: 14 ALR p 308 et seq; 4 Pomeroy's Equity Jurisprudence, 5th ed, Sec 1304; In Re Santillanes, 47 N Mex 140, 138 P2d 503; 17 McQuillin's Municipal Corporations, 3rd ed, Sec 47.16, p 43 et seq; 31 Am Jur, Juvenile Courts and Offenders, Sec 33, p 801; 1 Wharton's Criminal Law, 12th ed, Sec 366, p 480 et seq; 43 CJS pp 50–55; New York Life Ins. Co. v. Bangs, 103 US 435, 26 L ed 580.

In McQuillin on Municipal Corporations it is said:

"Laws, especially statutes, establishing and conferring jurisdiction upon juvenile courts and empowering such courts to take custody and control of the persons of children have been considered by the courts of last resort in many states. . . . . That the state is the ultimate parent of all its dependent inhabitants, especially infants, is an old and familiar legal conception. 'It is essential to every well-ordered social system that there should be some judicial authority by which protection may be

afforded to those who cannot protect themselves; . . . that there should be some tribunal whose duty it is to supervise the care of the persons and estate of infants.' For two centuries at least the English courts of chancery have exercised jurisdiction for the protection of the child when deemed necessary, and this jurisdiction was not based alone on the fact that the child possessed property. In this country from the beginning, equity courts have exercised the same jurisdiction for the like purpose of protecting minors. . . . .

" 'There has been considered to exist in England a prerogative in the Crown, as parens patriae, to be exercised by the Court of Chancery, for the protection of any infant residing temporarily or permanently within its jurisdiction.' " 17 McQuillin, Municipal Corporations, Sec 47.16, pp 43–44, 45.

In New York Life Ins. Co. v. Bangs, supra, the Supreme Court of the United States speaking through Mr. Justice Field said:

"The general authority of courts of equity over the persons and estates of infants, upon which counsel have so much dwelt, is not questioned. It may be exerted, upon proper application, for the protection of both. This jurisdiction in the English courts of chancery is supposed to have originated in the prerogative of the Crown, arising from its general duty as parens patriae to protect persons who have no other rightful protector. But partaking, says Story, as the prerogative does, more of the nature of a judicial administration of rights and duties in foro conscientiae than of a strict executive authority, it was very naturally exercised by the court of chancery as a branch of its original general jurisdiction. 'Accordingly,' he adds, 'the doctrine now commonly maintained is, that the general superintendence and protective jurisdiction of the court of chancery over the persons and property of infants is a delegation of the rights and duty of the Crown; that it belonged to that court and was exercised by it from its first establishment; . . . . The jurisdiction possessed by the English courts of chancery from this supposed delegation of the authority of the. Crown as parens patriae is more frequently exercised in this country by the courts of the States than by the courts of the United States. It is the

state and not the Federal Government, except in the territories and the District of Columbia, which stands, with reference to the persons and property of infants, in the situation of parens patriae."

"In this country the several states stand, with reference to the persons and property of infants, in the situation of parens patriae. No such jurisdiction is vested in the United States except as to territories and the District of Columbia. The state, as parens patriae, is authorized to legislate for the protection, care, custody, and maintenance of children within its jurisdiction." 27 Am Jur, Infants, p 823.

In Corpus Juris Secundum it is said:

"A minor, deprived of parental care and control, is a ward of the state, over whom the state may exercise its sovereign power of guardianship; and to effect such power the legislature may make reasonable regulations for the minor's protection and welfare." 43 CJS p 50.

"By whatever court the jurisdiction is exercised, it generally is of the same character as that exercised by the court of chancery over the persons of infants, and the power may be implied from a general legislative or constitutional grant of chancery powers." 43 CJS p 52.

In construing and applying the juvenile court law of Wisconsin the Supreme Court of that state speaking through Chief Justice Winslow (State v. Scholl, 167 Wis 504, 167 NW 830) said:

"The proceedings under this law are in no sense criminal proceedings, nor is the result in any case a conviction or punishment for crime. They are simply statutory proceedings by which the state in the legitimate exercise of its police power, or, in other words, its right to preserve its own integrity and future existence, reaches out its arm in a kindly way and provides for the protection of its children from parental neglect or from vicious influences and surroundings, either by keeping watch over the child while in its natural home, or, where that seems impracticable, by placing it in an institution designed for the

purpose." 167 Wis at p 509, 167 NW. at p 831. See, also, In Re Johnson, 173 Wis 571, 181 NW 741.

In a proceeding under the juvenile court law of Kansas the Supreme Court of Kansas said:

"In a general way, it may be said that these statutes, instead of attempting to punish juvenile offenders for misconduct, criminal or otherwise, try to remove them from the path of temptation, and by preventive and corrective means seek to direct them in the paths of rectitude. It is an assertion upon the part of the state of its right to exercise its power as parens patriae for the welfare of such of its minor citizens as are deprived of proper parental control and oversight, and are disposed to go wrong. These words, meaning 'Father of his country,' were applied originally to the king, and are used to designate the state, referring to its sovereign power of guardianship over persons under disability. When this country achieved its independence, the prerogatives of the crown devolved upon the people of the states. 'The sovereign will is made known to us by legislative enactment. The state, as a sovereign, is the parens patriae. . . .' (Fontain v. Ravenel, 58 US 369, 384, 15 US (L ed) 80.)" In Re Turner, 94 Kan 115, 145 Pac 871, Ann Cas 1916E 1022.

In construing and applying the juvenile court act of Rhode Island in Givardi v. Juvenile Court of Sixth Judicial Dist., 49 RI 336, 142 Atl 542, the Supreme Court of that state said:

"The general purpose of the act is plain. It was intended to humanely deal with minors of the ages specified in the act, who have violated some ordinance of a city or town, or who have committed an offense against the laws of the state, or who from various specified causes are tending towards an immoral, vicious, or criminal life. The aim of the act is to treat such minors, not as criminals, but as wards of the state."

What was said by the Supreme Courts of Wisconsin, Kansas and Rhode Island is quite applicable with respect to the juvenile court law of this state.

As has been pointed out the juvenile court law was first enacted in 1911. It was reenacted with certain changes in 1943. Laws 1943, Chapter 212. The law enacted in 1911 provided that the act "shall be construed to repeal existing laws in conflict

with this act under and by which dependent, neglected and delinquent children as defined by this act might be arrested, complained against, committed, confined or taken into or placed in custody, in justice courts or police courts, but as to all other laws it shall be construed as cumulative and not as exclusive." Laws 1911, Chapter 177, Sec 27. The law was construed by this Court in State ex rel. Neville v. Overby, supra. This Court held that all former statutes giving police magistrates and justice courts jurisdiction over juvenile offenders under the age of eighteen years were repealed and that police magistrates and justice courts were divested of such jurisdiction, but that the district court was not divested of criminal jurisdiction over such juvenile offenders. The Court said:

"The legislative purpose is clearly evidenced by the repeal clause. There the intent to divest justice courts and police courts of all jurisdiction is made unmistakably clear; on the other hand the purpose not to divest the district court of jurisdiction is equally manifest." 54 ND at p 307.

And again:

"The legislative intent, with respect to the arrest of juvenile offenders, is so clearly expressed in Sec. 11,416, Comp Laws 1913 (Laws 1911, Chapter 177, Sec 15), that no comment seems necessary. To bring a juvenile, under the age of eighteen years, before a justice of the peace or a police magistrate for the purpose of a preliminary examination is in manifest defiance of the statute." 54 ND at p 306.

The original juvenile court law contained the provision that the juvenile court "may in its discretion in any case of a delinquent child permit such child to be proceeded against in accordance with the laws that may be in force governing the commission of crimes or violation of city, village or town ordinances." Laws 1911, Chapter 177, Sec 11. It will be noted, this provision applied to children of all ages within the provisions of the law. In Laws 1943, Chapter 212, this provision was changed so as to provide that "when any child *fourteen years of age or older*, is charged with commission of an offense, a judge of the juvenile court may in his discretion, permit such child to be proceeded against in accordance with the laws or ordinances

that may be in force governing such offense." Laws 1943, Ch 212, Sec 13.

Chapter 212, Laws 1943, was intended to embody and did embody all the provisions of law relating to juvenile courts. The title of the act stated that it is "An Act Relating to the Juvenile Court and the Protection, Control, and Custody of Children" and amending and reenacting certain statutory enactments that are recited in the title and which constituted all the then existing provisions of law relating to juvenile courts. In main said Chapter 212 followed the plan of the original juvenile court act of 1911. Many of the provisions were identical. Certain changes were made but the changes did not detract from the purpose, the efficacy or scope of the law and in some particulars rather strengthened and enlarged the scope. Said Chapter 212 expressly repealed all acts and parts of acts in conflict with the provisions thereof. It was a complete measure. The juvenile court law as originally enacted in 1911 established a new plan or system for dealing with infants falling within the provisions of the act. Chapter 212, Laws 1943, adhered to such plan or system. It provides that children who fall within the provisions of the law shall be considered wards of the state for the purposes of such act, invokes the equity jurisdiction vested by the constitution in the district court to deal with such children and provides that "their persons shall be subject to the care and control of the (juvenile) court" as thereinafter provided. The act created new rights and remedy and affords to children falling within the provisions of the act immunity from prosecution for crime or for violation of penal ordinances to which they had formerly been subject. The law imposes upon the district court certain specific duties. It provides what shall be done and what shall not be done with respect to children within the provisions of the law. The statute is clearly mandatory. Crawford Statutory Construction, Sec 264, p 526; 3 Sutherland Statutory Construction, 3rd ed, Sec 5812, p 95; 59 CJ Sec 582, p 984. The language of the law indicates a clear intention that the provisions thereof are to be applied in all cases of children falling within its provisions. 59 CJ Sec 633, p 1076. As has been pointed out the state may assume direction, control and custody of the per-

son of an infant (43 CJS Sec 7, p 55) where the infant seems likely to go wrong as where he has been engaged in the commission of lawless acts or habitually associates with dissolute, vicious or immoral persons. "It is not the province of the courts to determine generally what conditions or exigencies will warrant the state in assuming control of infants, as this is a legislative function." 43 CJS Sec 7, p 55. In considering the constitutionality of the juvenile court law of Illinois, which in a large measure formed the pattern and basis for the juvenile court act of this state the Supreme Court of Illinois in Lindsay v. Lindsay, 257 Ill 328, 100 NE 892, 45 LRA NS 908, Ann Cas 1914A 1222, said:

"The prerogative of the state, arising out of its power and duty, as parens patriae, to protect the interests of infants, has always been exercised by courts of chancery." 257 Ill at p 334, 100 NE at p 894, 45 LRA NS at p 915.

" 'It is the unquestioned right and imperative duty of every enlightened government, in its character of parens patriae, to protect and provide for the comfort and well-being of such of its citizens as, by reason of infancy, defective understanding, or other misfortune or infirmity, are unable to take care of themselves. The performance of this duty is justly regarded as one of the most important of governmental functions, and all constitutional limitations must be so understood and construed as not to interfere with its proper and legitimate exercise.' " 257 Ill at p 336, 100 NE at p 895, 45 LRA NS at p 916.

By the juvenile court law the legislature invoked the equity jurisdiction of the district court, which court is vested by the constitution with original jurisdiction of all causes in equity, and is the only court vested with such jurisdiction by the constitution. ND Const Sec 85, Sec 103; Mead v. First National Bank, 24 ND at p 14, 138 NW at p 366. See, also, Kronschnabel v. Isenhuth, supra. The police magistrate was not vested with equity powers and jurisdiction in equity matters could not be conferred upon him. Mead v. First National Bank, supra.

In McDermont v. Dinnie et al, 6 ND 278, 69 NW 294, this Court said:

"It will be observed that police magistrates and their courts

are provided for and established by the constitution. This being the case, the legislature is powerless to legislate the one or the other out of existence. . . . The term 'police magistrate' or 'police justice' has a definite and well-understood meaning. Allen, J., in Wenzler v. People, 58 NY 530, thus defines it: 'A police justice is a magistrate charged exclusively with the duties incident to the common-law office of a conservator or justice of the peace, and the prefix "police" serves merely to distinguish them from justices having also civil jurisdiction.' A police magistrate is an inferior judicial magistrate, whose jurisdiction in the absence of constitutional or statutory extensions, is confined to criminal cases arising under the ordinances and regulations of a municipality." 6 ND at p 281.

As has been pointed out, the juvenile court law was enacted under the police power. The police power "is an inherent attribute of sovereignty, and exists without any reservation in the constitution, being founded on the duty of the state to protect its citizens and provide for the safety and good order of society." 16 CJS pp 539–540. The juvenile court law is "an assertion upon the part of the state of its right to exercise its power as parens patriae," for the welfare of such children as fall within the provisions of the act and to treat such children "not as criminals but as wards of the State." In Re Turner, supra; Givardi v. Juvenile Court of Sixth Judicial District, supra. The police power and the power as parens patriae and the right of the state to exercise such powers for the welfare and protection of infants who are in need of such protection are inherent in the state. Indeed, it has been said that the "constitution supposes the pre-existence of the police power and must be construed with reference to that fact." 11 Am Jur 969; 16 CJS p 541. The constitution of this state contains no provision purporting to limit the right of the state to enact legislation under the police power or to exercise its right and duty as parens patriae. It is elementary that every reasonable presumption is in favor of the constitutionality of a statute and that this presumption is conclusive unless it is clearly shown that the enactment is prohibited by the constitution of the state or the constitution of the United States. State v. First State Bank, 52 ND 231, 244, 202

NW 391. As was said by the great chief justice: "Let the end be legitimate, let it be within the scope of the constitution, and all means which are appropriate, which are plainly adapted to that end, which are not prohibited but consistent with the letter and spirit of the constitution, are constitutional." M'Culloch v. Maryland (US) 4 Wheat 316, 421, 4 L ed 579, 605. The attack upon the constitutionality of the juvenile court act is predicated solely upon the contention that the act violates Sec 113 of the Constitution of North Dakota which section so far as material here provides:

"The legislative assembly shall provide by law for the election of police magistrates in cities, incorporated towns, and villages, who in addition to their jurisdiction of all cases arising under the ordinances of said cities, towns and villages, shall be ex officio justices of the peace of the county in which said cities, towns and villages may be located."

In support of this contention petitioners cite the decision of this Court in McDermont v. Dinnie et al, 6 ND 278, 69 NW 294. The facts involved in the case cited are so wholly different from those involved in this case that the decision there has no application here. That case involved a statute establishing a municipal court in each incorporated city of the state having a population of 5000 inhabitants or over. Such statute expressly provided that such municipal court shall have "exclusive jurisdiction over all violations of ordinances of the city in which it is established and from the time of its creation all the jurisdiction and the powers heretofore exercised by police magistrates in such cities shall cease." 6 ND at p 279. It is obvious that the municipal court established by the statute involved in that case was intended to supersede the police magistrates in all cases arising under the ordinances of a city in which such new court was established and in effect abolish the police magistrates' court. As was said by this Court in its decision in that case "by the language of the statute the magistrates of the constitution are swept out of existence." 6 ND at p 283. Obviously no such situation is created or sought to be created by the juvenile court act. The juvenile court act does not purport to confer upon the juvenile court jurisdiction in any cases arising under the ordi-

nances of a city, town or village or authorize the juvenile court to render judgment and pronounce sentence for the violation of any of such ordinances. Proceedings under the juvenile court law are in no sense a criminal action or an action arising under an ordinance to punish one who has violated the ordinance. The proceedings under the juvenile court act are simply proceedings "by which the state in the legitimate exercise of its police power, or, in other words, its right to preserve its own integrity and future existence, reaches out its arm in a kindly way and provides for the protection of its children" who are in need of such protection. State v. Scholl, supra.

It is well settled that all doubt as to the constitutionality of a statute including doubts and uncertainties arising from the constitution as well as the statute "should be resolved in favor of the validity of the statute" and that the statute will be upheld by the courts unless it clearly appears that it violates the constitution. 16 CJS p 264 et seq; People v. McBride, 234 Ill 146, 84 NE 865, 123 Am St Rep 82, 14 Ann Cas 994; People v. Guagliata, 362 Ill 427, 432, 200 NE 169, 171, 103 ALR 1035, 1039. In ascertaining the intent "and general purpose, as well as meaning, of a constitution or a part thereof, it should be construed as a whole." 16 CJS Sec 23, p 62; 11 Am Jur Constitutional Law, Sec 53, p 661 et seq; State ex rel. Germain v. Ross, 39 ND 630, 637, 170 NW 121, 124; Goughnor v. Brandt, 47 ND 368, 371, 182 NW 309, 310.

Considering the constitution as a whole, the scope of the law-making power of the legislature and the relationship between the state and cities under the constitution there could have been no intention on the part of the framers of the constitution that the provision in Sec 113 of the Constitution that the police magistrate shall have jurisdiction of all cases arising under the ordinances of the city should in any manner restrict or impede the general law-making power of the legislature. When the framers of the constitution referred to "cases arising under the ordinances of said cities" they knew that the cities would have no inherent right to enact ordinances; that ordinances could be enacted only pursuant to authority conferred upon cities by law. That such ordinances naturally would relate to matters inci-

dental to municipal government and of local concern. 16 CJS pp 339–340. That no question could arise under the ordinances of any city except as the legislature had made that possible by authorizing ordinances to be enacted. That no punishment could be imposed for the violation of any ordinance except as the legislature had prescribed by law, or as the legislature had authorized the city to prescribe by ordinance. That the legislature, at any time it saw fit to do so, might withdraw the authority to cities to enact ordinances, and supersede and invalidate ordinances that had been enacted under such authority. It seems clear that the lawmaking power of the legislature was not affected or limited by any ordinances cities might have enacted. That the legislature was not required to ascertain whether any city had enacted any ordinance that would conflict with a statute which the legislature was enacting. That the legislature at any time might enact any law it saw fit to enact unless it contravened some provision of the State or Federal Constitution. That in event the statute was in conflict with an ordinance that had been enacted by a city the statute would prevail and the ordinance or parts of ordinances in conflict with the statute would be superseded and rendered invalid. The juvenile court law relates to matters of statewide concern,—matters concerning which the legislature had broad powers. Such powers were not affected or restricted by any authority the legislature might have granted to cities to enact ordinances, or by any ordinances that a city might have enacted pursuant to such authority.

When Chapter 212, Laws 1943, became effective it operated to repeal the provisions of any former statute, and to supersede and invalidate the provisions of any ordinance of any city which conflicted with the provisions of said Chapter 212. Homer v. Fall River, 326 Mass 673, 96 NE2d 152; Geneseo v. Illinois Northern Utilities Co., 363 Ill 89, 1 NE2d 392, 394; Pipoly v. Benson, 20 Cal2d 366, 125 P2d 482, 147 ALR 515; Richards v. City of Pontiac, 305 Mich 666, 9 NW2d 885; Ex Parte Loving, 178 Mo 194, 77 SW 508; 2 McQuillin, Municipal Corporations, 3rd ed, Sec 4.05, pp 18–19. By said Chapter 212, the legislature declared that when any child under eighteen years of age has committed an act or is in any of the situations or conditions

specified in Laws 1943, Chapter 212, Sec 8(1), (NDRC 1943, 27–1608(1)), the child shall be considered a ward of the state and his person shall be subject to the care, guardianship and control of the juvenile court as provided in the juvenile court law. The state thus asserted its right to guardianship and its power as parens patriae over all children who fall within the provisions of the juvenile court law, and delegated its authority of guardianship over the person of such child to the juvenile court and thus invoked the equity jurisdiction of such court and constituted the child a ward of the court. 43 CJS Sec 7, p 55; 17 McQuillin, Municipal Corporations, 3rd ed, p 46; 4 Pomeroy's Equity Jurisdiction, 5th ed, Sections 1304, 1305.

Arthur Helland and Thomas Smith were 16 years of age. Under the terms of the juvenile court law they must be considered wards of the state and their persons were subject to the care, guardianship and control of the juvenile court, and all proceedings concerning them on account of the violation of a city ordinance were required to be initiated in the juvenile court and conducted as provided in the juvenile court law. The policeman who arrested them held them in custody for the purpose of taking them, or having them taken, immediately to the juvenile court. As Arthur Helland and Thomas Smith were only 16 years of age the juvenile court might have waived jurisdiction and permitted them to be tried before the police magistrate but no such permission was given. Whether the jurisdiction of the juvenile court should be waived and said Arthur Helland and Thomas Smith permitted to be proceeded against in accordance with the ordinance it was charged that they had violated was a preliminary question exclusively for the juvenile court. 43 CJS pp 234–235. The juvenile court had no opportunity to determine such question. The juvenile court did not waive its jurisdiction and grant such permission. Hence, Arthur Helland and Thomas Smith continued to be and were within and subject to the jurisdiction of the juvenile court, and the police magistrate was without authority to try the cases against them for violating the ordinance and to render judgment of conviction and pronounce sentence upon them for such violation.

Accordingly they were illegally restrained of their liberty by

the Chief of Police of the City of Minot and the district court was correct in so holding and directing that they be discharged from his custody. Entries made in the docket of the police magistrate show that said Arthur Helland and Thomas Smith were released to the district court pursuant to the writs of habeas corpus on the day the application for the writs was heard. It follows from what has been said that no cause has been shown in this proceeding for disturbing the decision of the district court in the issuance of such writs of habeas corpus and in ordering that Arthur Helland and Thomas Smith be released from the custody of the Chief of Police. The application of the petitioners for a supervisory writ directing that such action of the district court be set aside is denied.

GRIMSON and SATHRE, JJ., concur.

MORRIS, Ch. J. Dissenting. This is an original proceeding in the supreme court wherein the Chief of Police of the City of Minot and the Police Magistrate of the City of Minot seek a review, by a supervisory writ of this court, of the action of Honorable A. J. Gronna, Judge of the District Court of Ward County, in issuing writs of habeas corpus and upon hearings thereunder discharging from custody of the chief of police, Arthur Helland and Thomas Smith.

Arthur Helland and Thomas Smith are sixteen years of age. They were arrested on the evening of August 11, 1952, by an officer of the police department of the City of Minot and charged with disorderly conduct, an offense under the ordinances of the City of Minot. They pled guilty to the offense charged before the police magistrate of the city who sentenced each of them to be confined to the city jail for a period of ten days and to pay a fine of $5.00 and the costs of the action, amounting to an additional $5.00, and in default of the payment of fine and costs, each was sentenced to an additional ten days in jail. On the day of sentence, upon application of the offenders, Honorable A. J. Gronna, Judge of the District Court of Ward County, issued writs of habeas corpus directing the chief of police to deliver the offenders to the district court. At the hearings on these

writs, the district court determined that the offenders were illegally imprisoned and issued orders commanding the chief of police to discharge them from custody.

A petition was filed in this court by the officers of the City of Minot invoking the power of general superintending control over inferior courts, and we, deeming this a proper case for the exercise of the jurisdiction vested in this court by the constitution, (See State ex rel. Johnson v. Broderick, 75 ND 340, 27 NW2d 849) issued an order to the district court to show cause why his orders directing the discharge of the offenders should not be reviewed and set aside. The district court accordingly made his return, upon which a hearing was had and arguments presented on behalf of the officers of the City of Minot and on behalf of the offenders.

The facts with respect to the offense, arrest, and sentence of the offenders are the same in each case and the problems of law are identical. The boys in petitioning for writs of habeas corpus and the district court in granting the writs took the position that because of certain provisions of Chapter 27-16 NDRC 1943, commonly known as the juvenile court law, the police magistrate of the City of Minot was wholly without jurisdiction to sentence juvenile offenders for violations of ordinances of the city. There is no question as to the ages of the offenders or the commission of the offenses.

The juvenile court is in fact the district court functioning under a special statute (Section 27-1601 NDRC 1943). Section 103 of the North Dakota Constitution provides:

"The district courts shall have original jurisdiction, except as otherwise provided in this constitution, of all causes both at law and equity, and such appellate jurisdiction as may be conferred by law. They and the judges thereof shall also have jurisdiction and power to issue writs of habeas corpus, quo warranto, certiorari, injunction and other original and remedial writs, with authority to hear and determine the same."

Section 111 of the North Dakota Constitution provides:

"The county court shall have exclusive original jurisdiction in probate and testamentary matters, . . . ."

The authorities of the City of Minot rely on Section 113 of the North Dakota Constitution, which provides:

"The legislative assembly shall provide by law for the election of police magistrates in cities, incorporated towns, and villages, who in addition to their jurisdiction of all cases arising under the ordinances of said cities, towns and villages, shall be ex officio justices of the peace of the county in which said cities, towns and villages may be located. And the legislative assembly may confer upon said police magistrates the jurisdiction to hear, try and determine all cases of misdemeanors, and the prosecutions therein shall be by information."

It is contended that under this section the police magistrate has jurisdiction of all cases involving offenses by juveniles, as well as adults, arising under the city ordinances and that, insofar as the juvenile court act may deprive a police magistrate of the jurisdiction thus constitutionally vested in him, it is void.

In McDermont v. Dinnie, 6 ND 278, 69 NW 294, after quoting Section 113 of the North Dakota Constitution, this court said:

"It will be observed that police magistrates and their courts are provided for and established by the constitution. This being the case, the legislature is powerless to legislate the one or the other out of existence. This proposition is admitted in terms by the counsel for respondents, and, being elementary, no authorities need be cited. The term 'police magistrate' or 'police justice' has a definite and well-understood meaning. Allen, J., in Wenzler v. People, 58 NY 530, thus defines it: 'A police justice is a magistrate charged exclusively with the duties incident to the common-law office of a conservator or justice of the peace, and the prefix "police" serves merely to distinguish them from justices having also civil jurisdiction.' A police magistrate is an inferior judicial magistrate, whose jurisdiction in the absence of constitutional or statutory extensions, is confined to criminal cases arising under the ordinances and regulations of a municipality. Hence a court presided over by such magistrate was never a court of record, never had a seal, or was entitled to a clerk. It will be observed, also, that Section 113 of the constitution confers absolutely upon police magistrates a certain jurisdiction, to-wit: jurisdiction of all cases arising under the

ordinances of said cities, towns, and villages, and also the jurisdiction of county justices of the peace."

Under Section 85 of the North Dakota Constitution "The judicial power of the state of North Dakota shall be vested in a supreme court, district courts, county courts, justices of the peace, and in such other courts as may be created by law for cities, incorporated towns and villages." Concerning this section, it is said in McDermont v. Dinnie, supra:

"Undoubtedly, the legislature, under Section 85 of the constitution, might create additional courts for cities, incorporated towns, and villages; but it cannot abolish those established by the constitution."

In Becker County Sand and Gravel Co. v. Wosick, 62 ND 740, 245 NW 454, in an opinion written by Judge Christianson, after quoting Section 85, this court said:

"This constitutional provision inhibits the legislature from abolishing any of the courts enumerated therein or from diminishing or increasing their jurisdiction . . . ." (Citing McDermont v. Dinnie, supra.)

In Espeland v. Police Magistrate's Court of City of Grand Forks, 78 ND 349, 49 NW2d 394, this court again spoke through Judge Christianson and in the syllabus by the court, consisting of all the present members, we said:

"A police magistrate is ex officio justice of the peace of the county in which the city in which he holds office as police magistrate is located. As police magistrate he has exclusive jurisdiction to hear, try and determine all cases arising under the ordinances of the city; as ex officio justice of the peace he has concurrent jurisdiction with the justices of the peace of the county in all civil actions and in all criminal actions for offenses against the laws of the state committed within the county. ND Const, Sec 113; NDRC 1943, 40–1801."

In Section 40–1801 NDRC 1943 it is said:

"The police magistrate within a city and the village justice of the peace within a village each shall have exclusive jurisdiction of, and shall hear, try, and determine, all offenses against the ordinances of the city or village, as the case may be."

Section 40–1110 NDRC 1943 provides:

"Any action brought to recover any fine, to enforce any penalty, or to punish any violation of an ordinance of any municipality shall be brought in the corporate name of the municipality as plaintiff."

In Village of Litchville v. Hanson, 19 ND 672, 124 NW 1119, we find that:

"City or village ordinances, though penal in character, are not criminal laws. Prosecutions under city or village ordinances are not covered by that section of the Constitution which reads: 'All prosecutions shall be in the name and by authority of the state of North Dakota.' Cases under city or village ordinances, while resembling criminal cases in being penal proceedings, are not, strictly speaking, criminal proceedings."

These are the cases over which Section 113 vests jurisdiction in police magistrate courts.

Under Section 103 of the constitution the district courts are given general original jurisdiction, except as otherwise provided. It was otherwise provided by Section 111 in which the county courts were given exclusive jurisdiction in probate matters. It was also otherwise provided in Section 113, which, as we have stated in the quotations above, confers upon police magistrates jurisdiction in all cases arising under the ordinances of cities, towns, and villages. It may be noted that Section 113 uses the word "cases," while Section 103 uses the word "causes." These words as used in these two sections of the constitution are synonymous and import a state of facts which furnishes occasion in each instance for the exercise of the jurisdiction of the court. Buell v. Dodge, 63 Cal 553.

It is pointed out that cities are incorporated through general law of the legislature and that they are creatures of statute subject to the legislative will. See State ex rel. Shaw v. Frazier, 39 ND 430, 167 NW 510; North Fargo v. Fargo, 49 ND 597, 192 NW 977; Sitte v. Paulson, 56 ND 146, 216 NW 344; Fargo v. Sathre, 76 ND 341, 36 NW2d 39. In none of these cases was a municipal court or its jurisdiction involved. It is fallaciously assumed that the legislative authority over the governmental and proprietary powers of cities extends to the jurisdiction of

police magistrates. An examination of pertinent constitutional provisions makes the error apparent.

Article VI deals with municipal corporations and consists only of Section 130, which reads:

"The legislative assembly shall provide by general law for the organization of municipal corporations restricting their powers as to levying taxes and assessments, borrowing money and contracting debts, and money raised by taxation, loan or assessment for any purpose shall not be diverted to any other purpose except by authority of law."

This article and section is wholly silent regarding the creation or organization of courts within municipal corporations. This silence is significant and in itself becomes eloquent when we turn to Article IV dealing with the judicial department and consisting of Sections 85 to 120 inclusive. By this article the constitution itself sets up a complete judicial system from the supreme court of the state down to and including the courts of police magistrates. The creation of police magistrates courts was not left to the discretion of the legislature. Neither could the legislature determine their jurisdiction by general law, nor could the jurisdiction thereof be increased or diminished by a legislative enactment. See Becker County Sand and Gravel Co. v. Wosick, supra. The question here is not one of the power of the legislature over cities, but one of the power of the legislature over the judicial system of the state. The prevailing decision views the court of the police magistrate as a mere incident of municipal government. To me this court is an integral part of the coordinate judicial branch of the state government created not by the legislature but by the constitution and made a component part of the judicial system.

It is of interest here to note that the legislature itself has shown reluctance to assume responsibility for the creation of courts and the determination of their jurisdiction beyond that now prescribed by the constitution. At the recent Thirty-third Legislative Assembly of North Dakota the assembly itself rejected Senate Concurrent Resolution C which, if submitted to and approved by the electorate, would have amended or repealed

various sections of the constitution, including Section 113 providing for municipal courts, and would have provided that "The judicial power of the State of North Dakota shall be vested in a Supreme Court, District Courts, and such other courts as may be created by law." The rejection of this resolution indicated a desire on the part of the legislature to permit the courts and their jurisdiction to remain as presently provided for in the constitution.

Section 113 is a plain and direct mandate to the legislature to provide for the election of police magistrates in cities, incorporated towns, and villages "who in addition to their jurisdiction of all cases arising under the ordinances of said cities, towns and villages, shall be ex officio justices of the peace . . . ." The conclusion is inescapable that the legislature cannot diminish the jurisdiction of police magistrates by transferring a part of it to another court. The power here in question is primarily judicial, not municipal and may not be curtailed or abolished by general law.

The books contain many cases dealing with procedure in juvenile courts under myriad and divergent statutes. Diligent search has revealed no constitutional provision such as our Section 113 and none has been cited to us. Neither search nor citation reveals a single case where the legislature has been permitted to impinge upon constitutionally conferred jurisdiction. An analogous situation was presented in People v. Lattimore, 362 Ill 206, 199 NE 275, wherein it is said:

"Article 6 of the Constitution of 1870 created our judicial system. By section 26 of that article the criminal court of Cook county was established and its jurisdiction defined. While the circuit court is a court of general jurisdiction, yet the jurisdiction of the circuit court of Cook county is not necessarily the same in all respects as the circuit courts of other counties of the state. It does not have concurrent jurisdiction with the criminal court of Cook county of criminal causes, but jurisdiction of criminal cases is by section 26 of our Constitution placed in the criminal court of Cook county. People v. Feinberg, 348 Ill 549, 181 NE 437; People v. Warren, 260 Ill 297, 103 NE 248.

The juvenile court is a court of limited jurisdiction. The Legislature is without authority to confer upon an inferior court the power to stay a court created by the Constitution from proceeding with the trial of a cause jurisdiction of which is expressly granted to it by the Constitution. Nor, in our opinion, was it the legislative intent to attempt to confer such power upon the juvenile court." See also People ex rel. Malec v. Lewis, 362 Ill 229, 199 NE 276.

In this state, while cities are creatures of statute created by the legislature under authority of and within the limits prescribed by the constitution, most of our courts, including those of the police magistrates, are creations of the constitution itself and, wherever the jurisdiction of these courts is provided by the constitution, it may not be abrogated or altered by legislative action, and in this respect the same rule applies to the courts of police magistrates that applies to the district court and the supreme court.

"In the constitutional form of government the three departments—legislative, executive, and judicial—depend for their powers on the organic law of the state. Hence, the Constitution is the common source of the power and authority of every court, and all questions concerning jurisdiction of a court must be determined by that instrument, with the exception of certain inherent powers which of right belong to all courts. Therefore, unless the power or authority of a court to perform a contemplated act can be found in the Constitution or the laws enacted thereunder, it is without jurisdiction and its acts are invalid. Thus, while the legislature may, within proper bounds, prescribe rules of practice and procedure for the exercise of jurisdiction by the courts, it cannot abridge or enlarge powers conferred on them by the Constitution or take away jurisdiction thereby vested in them." 14 Am Jur, Courts, Section 163.

"Except in so far as authorized by the constitution, the legislature cannot abolish, divide, reorganize, or consolidate constitutional courts, nor alter or diminish the essentials of the jurisdiction, functions, or judicial powers conferred on such courts." 21 CJS, Courts, Section 122.

I can reach no conclusion other than that the district court act-

ing as a juvenile court cannot interfere with the jurisdiction of a police magistrate court which has obtained jurisdiction of a person over fourteen years of age and under eighteen years of age in a case arising under a city ordinance. This opinion would end here but for the fact that much has been written and said which tends to obscure rather than clarify the jural issues. The history of the development of juvenile courts in America shows a noble shift in the administration of justice with respect to children from punishment to rehabilitation. This movement sprang from the prerogative of the state as parens patriae to protect the interests of children. But like all other powers of the state, it must be exercised in accordance with the provisions of the constitution. The question here is not one of social policy but of constitutional powers. The people first and finally speak through their constitution which is the supreme law of the state to which the doctrine of parens patriae must yield in event of conflict. This is still "a government of laws and not of men."

The proponents of the writs seek solace in obiter dicta to be found in the case of State ex rel. Neville v. Overby, 54 ND 295, 209 NW 552. The opinion in that case must be read in the light of the issues then before the court which involved only the criminal jurisdiction of the district court versus the jurisdiction of the district court acting as a juvenile court. The case concerned state criminal statutes and not city ordinances. There was no question of constitutional law and no question of the jurisdiction of police magistrates under Section 113 of the constitution. This is thus clearly stated by the court in its opinion as follows:

"We are not concerned with the question of the jurisdiction of police magistrate and justices of the peace over juvenile offenders against the law. The persons in whose behalf the writ of habeas corpus is prosecuted, are not held by virtue of a commitment issued by the police magistrate or justice of the peace; they are held by virtue of a judgment of conviction of a felony in the district court which has exclusive jurisdiction over such offenses."

It is argued that the legislature has power to fix the age at which children may be held to be criminally responsible and that it follows that the age may be fixed either absolutely or condi-

tionally. This may be true in some respects, depending, however, upon the conditions. The legislature has fixed the age of criminal responsibility in this state by Section 12–0201 NDRC 1943 which provides that:

"All persons are capable of committing crime except those belonging to the following classes:

"1. Children under the age of seven years;

"2. Children over the age of seven years but under the age of fourteen years, in the absence of clear proof that at the time of committing the act or neglect charged against them they knew its wrongfulness; . . . ."

The rules thus stated are applicable to all courts. Our juvenile law, Chapter 27–16 NDRC 1943, does not purport to change or modify the rules of capacity to commit crime. But according to the views of the proponents of the writs, it vests in the juvenile court jurisdiction superior to that of police magistrate courts over child offenders against city ordinances. It does not purport to make a child incapable of committing the offense. It strongly infers just the opposite when it says:

"When any child, fourteen years of age or older, is charged with commission of an offense, a judge of the juvenile court, in his discretion, may permit such child to be proceeded against in accordance with the laws or ordinances which may be in force governing such offense." Section 27–1613 NDRC 1943.

Thus the law recognizes that a child fourteen years of age or older is capable of committing an offense. But it is claimed that the judge of the juvenile court, not the statute, not the constitution, determines whether the offender may be proceeded against in accordance with a city ordinance governing the offense. The power which the statute thus purports to vest in the juvenile judge collides directly with the jurisdiction of the police magistrate, under Section 113 of the constitution. The constitution being supreme, the statute must yield. In this case the judge of the district court, relying upon the powers the statute purports to give him as judge of the juvenile court, erroneously reached the conclusion that he had the power to divest the police magistrate court of the jurisdiction which it had acquired over the two offenders against the ordinances of

the City of Minot. Relying upon the statute, he improvidently issued writs of habeas corpus freeing the proponents of the writs from custody.

Burke, J., concurs.